ESPELAND, APPELLANT, *v.* ESPELAND, RESPONDENT.

(No. 8,098.)

(Submitted January 7, 1941. Decided January 27, 1941.)

[109 Pac. (2d) 792.]

*Messrs. Pope, Smith & Smith,* for Appellant, submitted a brief; *Mr. Russell A. Smith* argued the cause orally.

*Messrs. Mulroney & Mulroney,* for Respondent, submitted a brief; *Mr. E. F. Mulroney* argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This action was commenced by plaintiff, Dorothy Ann Espeland, against her husband, Henry Espeland, in the district court for Missoula county. The facts are that in August, 1913, the parties herein were married, and that in October, 1928, the defendant, Henry Espeland, filed an action for divorce against this plaintiff in the Superior Court of the State of Washington for the

County of King. Plaintiff in this action filed a cross-complaint in that action asking for separate maintenance. In April, 1929, the Washington court granted this plaintiff a decree of separate maintenance providing in part and so far as here material as follows: "It is further ordered, adjudged and decreed that plaintiff [defendant here] do pay to the defendant [plaintiff here] monthly the sum of $95.00 as and for her support, paying the same $30.00 on the 15th day of each month and $65.00 on the 30th day of each month, all until the further order of the court or so long as the plaintiff [defendant here] wilfully continues to live separate and apart from the defendant [plaintiff here] and continues his wrongful abandonment of her and so long as he shall wrongfully refuse to live with the defendant [plaintiff here] as a husband should. That the court retains jurisdiction for the purpose of making such orders as may in the future be just and equitable." Payments were regularly made under the decree for some time, then payments became delinquent and for some period the defendant paid $25 a month, and in May, 1939, he made a payment and then ceased to make any at all.

The complaint alleged the existence and validity of the Washington decree and that under that decree there was owing to the plaintiff in unpaid alimony the sum of $5,815; that the Washington decree had not been modified and that the defendant had continued wrongfully to refuse to live with the plaintiff. The purpose of the action, as stated by the complaint, was to recover a judgment for the unpaid and past due alimony under the Washington decree and to establish that decree as a decree of the Montana court. The answer, after admitting the existence and validity of the Washington decree and the amount of the payments alleged, admitted the amount unpaid as alleged by the complaint, but denied that it was owing. The answer denied that the defendant wrongfully refused to live with the plaintiff and set up by way of. affirmative defense: (1) The statute of limitations; (2) that the obligation created by the Washington decree had been extinguished by an executed oral agreement;

and (3) that the decree of the Washington court is not a final decree entitled to enforcement in Montana.

The lower court found after trial that the action was not barred by the statute of limitations, that the decree of the Washington court was not a final decree as contended by the plaintiff but that it was entitled to comity and that the obligation to pay had not been extinguished by an oral agreement. The court found that by acquiescence on the part of the plaintiff and agreement, the parties had reduced the amount of the alimony from $95 a month to $25 a month, and found that there were delinquencies in the payment of monthly payments at $25 a month and granted the judgment for that amount.

As to the allegation that the defendant continued to wrongfully refuse to live with the plaintiff, there is a difference of opinion between the parties as to the court's finding on this question. The first finding of fact is that the parties have continued to live separate and apart since April, 1926, "this being the continued wish and desire of the defendant and against the desire and wishes of the plaintiff who at many times has offered reconciliation and shown her desire to resume marital relations with the defendant."

Before we consider the specifications and cross-specifications of error, we must first dispose of the motion on the part of the defendant to dismiss the appeal. This motion was based on certain matters occurring subsequent to the decision in the district court, which was made on the 8th day of February, 1940. After that decision through other counsel this plaintiff caused to be issued in the Washington court in the original action writs of execution and garnishment and caused them to be served upon the defendant's employer, the Northern Pacific Railway Company, and thereafter a stipulation was entered into between plaintiff's Washington attorneys and defendant's Washington attorneys, under which the defendant made certain payments to the plaintiff which he now contends amount to an abandonment of this appeal on the theory that by her action in Washington, plaintiff is indirectly enforcing the Montana judgment and taking its fruits, and that she cannot enforce the

judgment on the one hand and prosecute her appeal on the other.

The stipulation in question, after reciting the entry of the Washington judgment, refers to the present action, the decree and the present appeal. It then refers to the writs of execution and garnishment, and after stating that the plaintiff (defendant here) contends that the Washington court had no jurisdiction to issue the writs, provides: "Now therefore the plaintiff agrees to pay defendant Dorothy Ann Espeland, or her said attorneys, the sum of $389.98 out of the funds held pursuant to said writs of garnishment. The plaintiff further agrees to pay to said defendant or her said attorneys the sum of $50 out of his pay check on or about November 15, 1940, and $50 out of his semi-monthly pay check thereafter until the amount due pursuant to said decree of the said district court of Montana in said Cause No. 14120 has been paid in full, thereafter to pay $25 per month pursuant to said decree until the same is modified or set aside."

The quoted portion of the stipulation contains then the same provisions as to amounts to be paid by defendant as the decree from which this appeal is prosecuted. After this quoted portion, the stipulation contains a provision that the amount paid under the stipulation shall be credited upon any sums thereafter found due from plaintiff (defendant here) to the defendant (plaintiff here) by final judgment of a court of competent jurisdiction. And, further, the defendant in the stipulation agrees that no further writs issue so long as the plaintiff (defendant here) makes the payments promptly.

The final portion of the stipulation recites "that this stipulation is without prejudice to any legal rights of the parties hereto either in this cause or said cause now pending in the Supreme Court of the State of Montana, and both parties hereto reserve the right to object to the jurisdiction of the court in either of said causes and to assert all legal rights except as herein otherwise expressly provided."

The last portion of the stipulation renders any further discussion of the motion unnecessary. The clear import of that

provision is that the payments by the husband and acceptance by the wife under the stipulation shall not constitute an abandonment of the appeal, and clearly it did not do so. Without the stipulation the situation might be otherwise, but certainly the court must recognize the agreement made by the parties and the defendant will not be permitted to gainsay his agreement and by this motion secure relief contrary to its provisions.

On the issue of the continued separation of the parties, plaintiff produced witnesses in an apparent attempt to show that defendant's continued abandonment of the plaintiff was by reason of some relation with another woman. The testimony of the several witnesses was stricken on this point and error is predicated on the rulings of the court striking that testimony. If there was error, and we do not think there was because of the indefiniteness of the testimony stricken, the lack of foundation for much of it, the fact that much of it was hearsay and because it failed to prove the issue tendered, yet if it were admissible, no harm came to this plaintiff by reason of the rulings of the court because Finding No. 1, hereinbefore set out, together with the judgment for the plaintiff show that the court did find for the plaintiff on the issue of the continued wrongful abandonment of her by the defendant at the time of the trial.

By appropriate specification and cross-specification of error both parties question the court's finding that by an oral agreement the monthly alimony payment had been reduced to $25. The plaintiff's view is that neither in fact nor in law was such a reduction made and that the evidence does not support the court's finding. Defendant, on the other hand, pleaded and urged that in 1937 at a meeting between these parties at Missoula the defendant after saying he had been in the past "gypped" stated that he would pay no more to the plaintiff. His testimony was that after some discussion he agreed to pay $25 a month until the sum of $500 had been paid, and that he would pay her no more and that she assented to this arrangement. This defendant denies. On the basis

of the conflicting testimony, the court was warranted in finding as it did that no such agreement as to the $500 ever existed. The testimony as to the reduction to $25 a month is not sufficient to sustain the court's finding as to the reduction as a matter of fact.

There are in the record a number of letters and copies of letters passing between these parties going back almost to the time of the decree in the Washington suit. These letters and Exhibit No. 2 show that after March 1, 1932, the defendant was almost constantly in arrears on the monthly payments.

The trial court relies upon a letter written on June 14, 1932, by the plaintiff for its finding that by agreement and acquiescence the monthly payment had been reduced from $95 to $25. That letter was written in reply to one written by defendant in which he had set out reasons why he no longer could pay the $95 award, the chief of those reasons being that his living expenses had increased and that his salary had been reduced. In her reply the plaintiff said this among other things: "I received your nice letter Saturday evening but you did not tell me what you will send me each month. And you know what you owe me on the back payments. I don't expect you to send me the $95.00 when you have been cut. And I don't want any trouble, but I must know what you will do." Subsequent to this letter for some three years payments were made to the plaintiff in varying amounts ranging from $20 to $70 as found by the court.

Beginning in May, 1935, all of the payments were made at the rate of $25 per month. The court found after reciting that many letters were written in which the plaintiff displayed anxiety and desire to receive back payments, "Yet there is no complaint that the payments were not in larger amounts. nor that the payments of $95 should be restored."

So far as the period between the letter of June, 1932, and May, 1935, is concerned the evidence does not sustain this statement in the finding. It will be remembered that in this letter in the portion just quoted the statement of the plaintiff is indefinite. She does indicate that she is willing to accept

a lesser amount by reason of defendant's pay cut, but at the same time she states that she must know from him what this lesser sum is to be. No letter or other evidence appears to show that this defendant at any time complied with that request, or that any agreement, at least prior to May, 1935, was ever made as to the amount to be paid, and instead of accepting the amount sent each time without objection the record contains letters in which there is a great deal of discussion on the part of both parties of the payments and their amounts.

On March 17, 1935, the defendant wrote the plaintiff. This letter was apparently in reply to a letter from her. The only reasonable inference to be drawn from the language of it is that in her letter plaintiff had expressed dissatisfaction with the amount being sent by the defendant and had demanded larger payments. This letter is not in evidence. This is indicated by this language from his letter: "Your letter received some time ago and I don't quite like the attitude you take in your letter regarding the money I have been sending you. You say I have had my pay increased twice but you do not stop to realize that the first increase was taken up by 'payments' on the new pension law." Other language in the same letter sets out various reasons why he should not pay a larger amount. In a letter dated May 3, 1935, in reply to a letter apparently written by the defendant concerning the amount of the monthly payments, plaintiff says: "I sure don't understand you that you would only send me $20.00. * * * In the first place I did not agree to take the $35.00. Your lawyer will tell you that. He said I should have $67.50 per month. * * * But I just can't get along on $20.00 and you know that, I am afraid I will have to turn it over to Mr. Allen [her lawyer] and let him do what is best."

So far then, as the period up to May 25, 1935, is concerned, the record supports no finding that by agreement and acquiescence the amount of the monthly payments had been reduced. It is true that this correspondence indicates a willingness on the part of the plaintiff to accept a smaller amount to be agreed upon, yet the fact remains that no such agreement

was ever made and judgment should have been entered for the plaintiff for the difference between the amounts she actually received during that period and $95 a month as provided by the Washington decree.

As to the period from May, 1935, to the date of the judgment in this case, the record contains a number of letters passing between the parties. In none of these letters does there appear any objection to the amount being sent by the defendant to the plaintiff. Some of them urge more prompt payment, but there is no demand that larger amounts be paid. The only evidence of any agreement for that period or any other period consisted of a conversation held in Missoula by these parties in September of 1937. The court's finding as to this conversation is in No. 5, and it is set out in full as follows:

"In September, 1937, the plaintiff and the defendant met at Missoula and discussed affairs. The contention of the defendant that it was there agreed that an entire settlement of all their financial difficulties was then made at $500.00 and this to be paid at $25.00 per month, is not sustained. But the court finds that any agreement then reached between them was to the effect that the payments of $25.00 per month, which had then continued for a long period of time, would be continued in the future and not be interrupted when $500.00 more had been so paid; and that, as to any discussions or agreement reached as to past accrued payments, they only applied to the payments due prior to June, 1932. Thus by agreement and acquiescence the parties themselves have reduced such payments to $25.00 per month, and that the same should be so continued hereafter, at least until her necessities and his ability to pay are more adequately brought before this court than can be found in the present record."

The plaintiff denied that there was any discussion as to a final settlement as contended for by the defendant. In fact her testimony is that nothing was said as to any monthly payment or any agreement on the monthly payment except that the defendant "said he hadn't sent my check for August or Septem-

ber, but 'tomorrow being pay day, I will send you $50.00.' That was all that was mentioned.''

The only testimony of defendant relative to this conversation is that the plaintiff agreed there to accept $500 in full settlement of her right to alimony. He referred to the monthly payment of $25 only as the method by which that amount was to be paid. He does not testify to any agreement then or at any time that the monthly payment was to be reduced to $25. His testimony does show that the reduction was made by him and by him alone. He says in his testimony: '' * * * I took a $75.00 salary cut and tried to have her reduce the amount of the decree. I couldn't do anything on it. It went along, and I kept cutting down on the money.'' And ''previous to that time [Missoula conversation] I had cut it to $25.00 a month.'' And that ''about 1936 I cut it to that'' ($25).

The evidence does not support the conclusion of the trial court that by agreement and acquiescence the parties themselves made any reduction. We do not conceive that mere acceptance of the lesser amount, where there was no question as to the amount due, it being fixed by the judgment, could operate as a discharge of defendant's obligation to plaintiff. The payments were made to the clerk of the Washington court who in turn sent a check to the plaintiff. Exhibit two is his record and the amount due plaintiff is a matter of mathematical computation and the lower court should determine this and enter judgment for that amount.

In its conclusions of law the court said: ''That the decree ▇ of the Washington court, which reserved jurisdiction in itself, and dependent as it is on the future acts and conduct of the parties and the agreements reached between them, is not such a final judgment as to be entitled to full faith and credit in this court and state; but giving it due deference and respect, under the principles of comity, the plaintiff is entitled to a decree in equity of this court to enforce the amount of past accrued payments.''

Plaintiff assigns as error the court's conclusion urging that the decree is a final one and that as such it should be adopted

as the decree of the Montana court and should be enforceable in the same manner as though it had been originally entered here. She contends that under section 1 of Article IV of the Constitution of the United States, full faith and credit must be given the Washington decree. Section 1, Article IV provides: "Full faith and credit shall be given in each state to the public acts, records and judicial proceedings, of every other state. And the congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof."

The general rule as to this type of action is stated in 19 C. J. 364: "What is final decree. A foreign decree for alimony which is subject to the revision of the court is not a final judgment, within the full faith and credit clause, although it may be enforced on grounds of comity. On the other hand a foreign decree, where no reservation of a right to modify it appears in the decree itself, and where no such right is conferred upon the court by statute, is such a final determination of the rights of the parties as to create an obligation enforceable in other states."

Here the decree provided, as set out in the portion quoted *ante* that the payments were to be made "until the further order of the Court or so long as the plaintiff wilfully continues to live separate and apart from the defendant and discontinues his wrongful abandonment of her, and so long as he shall wrongfully refuse to live with the defendant as a husband should. That the Court retains jurisdiction for the purpose of making such orders as may in the future be just and equitable."

Plaintiff relies on the case of *Sistare* v. *Sistare*, 218 U. S. 1, 30 Sup. Ct. 682, 54 L. Ed. 905, where the rule is stated thus: "First, that, generally speaking, where a decree is rendered for alimony and is made payable in future installments, the right to such installments becomes absolute and vested upon becoming due, and is therefore protected by the full faith and credit clause, provided no modification of the decree has been made prior to the maturity of the installments, since, as declared in the *Barber Case* (21 How. 582, 16 L. Ed. 226), 'ali-

mony decreed to a wife in a divorce of separation from bed and board is as much a debt of record, until the decree has been recalled, as any other judgment for money is.' Second, that this general rule, however, does not obtain where by the law of the State in which a judgment for future alimony is rendered the right to demand and receive such future alimony is discretionary with the court which rendered the decree, to such an extent that no absolute or vested right attaches to receive the installments ordered by the decree to be paid, even although no application to annul or modify the decree in respect to alimony had been made prior to the installments becoming due.''

It is clear that the Washington decree comes within the second part of the rule announced in the *Sistare Case*. The court's reservation was such that in an action to enforce the decree, failure on the part of the defendant (plaintiff) to establish the continuance of the wrongful abandonment might result in an order which would reduce her claim for accrued alimony, and further the general reservation in the last sentence quoted is such that other facts might result in a reduction or cancellation of accrued alimony. It cannot be said that the monthly award became absolutely fixed each month under the reservation in the decree and the lower court's conclusion on this point was correct.

But defendant urges that since plaintiff expressly pleaded the finality of the Washington decree and asked that it be adopted as the decree of the Montana court it was error for the trial court to enter a decree based on the principles of comity. This might be true if the only relief sought were the establishment of the Washington decree as prayed, but plaintiff also seeks a judgment for the accrued monthly payments and the court, under the pleadings, was justified in concluding as it did.

We have considered the question of the statute of limitations and find the court's ruling was correct, and we do not believe any discussion of it necessary.

The cause is remanded for modification and after modification in accordance with what is here said, it is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN, ANDERSON and MORRIS concur.