ELMER HOLMES,

*Plaintiff and Respondent,*

vs.

EVA HOLMES,

*Defendant and Appellant*

EVA HOLMES,

*Plaintiff and Appellant*

vs.

ELMER HOLMES,

*Defendant and Respondent.*

(Nos. 2436 and 2435; November 29th, 1949; 211 Pac. (2d) 946)

318

## OPINION.

BLUME, Justice.

These actions involve, on the one hand, an action for divorce brought by Elmer Holmes against Eva Holmes in which a divorce was granted to Elmer Holmes, the plaintiff in that action. The second action, finally dismissed by the court, is an action for separate maintenance under Section 3-5919, Wyo. Comp. Stat., 1945, in which an order allowing alimony was entered, dated September 11, 1947. A motion was subsequently made to modify that order, so as to show that the allowance of alimony was one pendente lite. That motion and the issues in the divorce proceedings and the action for separate maintenance were consolidated for trial and the main question herein is as to whether or not the original order entered in the separate maintenance action was res judicata of the issues raised in the divorce proceedings. The parties will be referred to herein by name, or Elmer Holmes will be designated

as the plaintiff and Eva Holmes as the defendant or appellant.

No brief has been filed in this court on behalf of Elmer Holmes. It is true that the record indicates that he is poor. Despite his poverty, however, we wish that his counsel who represented him in the trial court had seen fit to file a brief herein in order to help us to solve the problems involved herein, some of which at least, are not unimportant. The court prefers to decide cases before it when all parties are represented.

The record in this case discloses the following facts:

On March 27, 1946, as alleged by appellant, Elmer Holmes brought an action for divorce against the appellant praying for a divorce. The grounds therefor were substantially the same as the grounds alleged in the subsequent divorce proceeding. On April 9, 1946, the court made an order directing Elmer Holmes to pay to the appellant $50 a month for her support. He failed to comply with the order. On August 5, 1947, the court, pursuant to motion cited Elmer Holmes to show cause why he should not be punished for contempt. On August 8, 1947, Elmer Holmes dismissed his petition without prejudice and nothing was done in the action subsequently.

On August 12, 1947, Eva Holmes instituted an action for separate maintenance against Elmer Holmes alleging that the parties were married on February 14, 1943, at Tacoma, in the State of Washington, and since that time have been and are now husband and wife; that no children were born as a result of the marriage; that on March 15, 1946, the defendant willfully and without just cause, deserted the plaintiff and has refused to live with and has failed to support her; that she, Eva Holmes, conducted herself as a faithful wife should; that Elmer Holmes is an able-bodied man and

should support her. She asked an order to that effect. Notice was served upon the defendant to appear in court on October 19, 1947, for a hearing upon the petition thus filed. On September 5, 1947, before a hearing thereon, Elmer Holmes, the defendant in the separate maintenance action, filed his answer and cross-petition admitting the marriage of the parties; that there are no children born of the marriage, but denying each and every other allegation contained in the petition for separate maintenance. In his cross-petition he alleged that Eva Holmes had been guilty of extreme cruelty to him and had offered him such indignities as to render his condition intolerable; that she, without just cause or excuse deserted and abandoned his home; that such desertion and abandonment had continued for more than one year last past; that she had conducted herself in an unseemly and unwifely manner; that she had continually associated improperly with other men and openly and notoriously attended public places of amusement with them; that she had visited the homes of other men at unseemly times and hours in a manner indicating her infidelity to the defendant; that such conduct on her part caused him great embarrassment and humiliation and created a condition which is intolerable and which he could no longer endure. He accordingly asked that Eva Holmes take nothing by her action and that he be granted an absolute divorce from her.

On September 15, 1947, an order dated September 11, 1947, was entered in the separate maintenance action reciting in part as follows: This cause comes on regularly for hearing on the petiiton of Eva Holmes for support of herself as the wife of Elmer Holmes. The plaintiff appears in person accompanied by John J. Spriggs, her attorney. The defendant appears in person with H. S. Harnsberger, his attorney. Both parties testify and produce their evidence and the court having

heard said evidence, considered the same, and after hearing arguments by the respective counsel finds generally for plaintiff and against the defendant. The court finds specifically that the plaintiff is lawfully wedded to the defendant; that since March 27, 1946, they have been living separate and apart; that during said time Elmer Holmes has failed and neglected to contribute anything to the support of Eva Holmes; that no proceedings for divorce are pending or were pending at the time of the commencement of this action; that the court now has full and complete jurisdiction of the parties and the subject matter herein; that Eva Holmes is in need of support by defendant; that Elmer Holmes should pay her $30 every two weeks, until the further order of the court herein, together with the sum of $25 as temporary allowance for attorney fees. An order for the payment of these sums was accordingly entered. On September 20, 1947, John J. Spriggs, as attorney for Eva Holmes filed a motion in the foregoing case moving the court to strike from the files the cross-petition of the defendant asking for a divorce alleging that such pleading is an improper pleading in the action for support and that the court has already determined in the hearing for such support that such pleading is improper in the case. On October 16, 1947, the court entered an order in that action that the motion to strike the cross-petition from the files be sustained and that it be stricken from the files.

Thereupon on September 24, 1947, Elmer Holmes, as plaintiff, filed in the court his petition for a divorce alleging substantially the grounds mentioned in the cross-petition filed in the separate maintenance action. On October 24, 1947, Eva Holmes filed in the divorce action a motion to compel the plaintiff to furnish a Bill of Particulars giving the names of the men and dates with whom she associated improperly and the

nature of her improper conduct with such men as charged in the petition. The motion was granted on November 13, 1947. On November 22, 1947, a paper purporting to be a Bill of Particulars was filed in the action alleging that: "This plaintiff alleges and shows the court that the name of the man with whom the defendant has principally improperly associated herself is Frank Longtine of Lander, Wyoming; that the exact dates of her improper association with the men as alleged in his petition are unknown to this plaintiff but that said alleged improperties occured at various times during the last 12 months immediately preceding the filing of this petition and have continued up to the time when this plaintiff filed his action for the divorce herein; that the nature of her improper association with such men and in particular the said Frank Longtine consisted of her visiting with such men, or the above named individual in the evening hours of numerous days and remaining in such habitation until the morning hours following and that the defendant has on numerous occasions accompanied them to various places of amusement and otherwise publicly in and about the towns of Riverton, Lander and Hudson, Wyoming, elsewhere in Fremont County."

On October 13, 1947, Eva Holmes commenced contempt proceedings against Elmer Holmes for failure to comply with the order of alimony to the appellant. As a result of these proceedings, Elmer Holmes paid to the plaintiff the sum of $60. On November 21, 1947, Eva Holmes filed in the divorce action what she called a Plea In Bar, in substance alleging that the judgment of the court dated September 11, 1947, in the action for separate maintenance, was res judicata of the issues in the action for divorce and asked the court to dismiss the latter action. She also asked for an additional order of support and additional attorney fees. A reply was

subsequently filed denying each and every allegation in the plea in bar and answer of Eva Holmes.

On January 6, 1948, a motion supported by affidavit, was filed in the action for separate maintenance above mentioned to the effect that the order made on September 11, 1947, should read that the order for payment of money made therein was only during the pendency of the action. The affidavit alleges in part as follows: "Said order was never submitted to the Affiant H. S. Harnsberger or his associate for examination or approval but that the signature of the presiding Judge was obtained and procured by the plaintiff or her counsel without the knowledge or approval of affiant or his associate; that the recitation of facts contained in the first paragraph of said order are untrue and not in accordance with the facts; that said cause has never been for final hearing, trial and determination and has only been before the court on a motion to have stricken the cross-petition of Elmer Holmes filed in said action."

The foregoing motion, together with the issues raised in the action of divorce by Elmer Holmes, and the issues in the separate maintenance action came on for hearing in the court about April 14, 1948. A decree for divorce was granted to Elmer Holmes as already mentioned. Further the order of September 11, 1947, was modified so as to show that the allowances made therein to Eva Holmes were only pendente lite. The court recited among other things: "The court received testimony and evidence upon said motion, (for modification) heard and considered the arguments of respective counsel and being thus advised in the premises finds that upon such evidence and testimony and of matters within this court's own recollection, that said order of September 11, 1947, so made and entered herein on September 15, 1947, should be vacated and set aside as a final order and adjudication in said mat-

ter and that there should be made and entered nunc pro tunc as of the said 15th day of September, 1947, an order making allowance for the support of the wife pendente lite and as temporary support for said wife pending the final hearing and determination of said cause." An order to that effect was accordingly entered.

In that connection the trial judge made the following statement: "My recollection of this proceeding may not be exactly correct but my impression is that this matter was tried in chambers as far as hearing was concerned. I also have a recollection that the judgment was not prepared at the time but was sent to me at Casper, and one reason that impresses that upon my mind was that the judgment sent to me at Casper was not o.k.'d. I had at first thought I would send it back for an o.k. Then I thought, 'Well, I'll sign it and send it back and if there is any question about it, why it can be corrected later.' I don't want to sign and I don't intend to make a habit of signing orders sent to me at Casper where there is an attorney on the other side without that o.k. I don't intend to sign an order here unless it has been o.k'd.

"I am just as positive as I can be of anything that this was not intended as a final adjudication; that it was a preliminary matter to provide support for the wife until the final determination and final trial can be had. I know that I didn't make any finding of any kind except that I directed that he pay $60 a month for the support of his wife, in two payments, and I am satisfied in my own mind that that was a temporary order. The motion to amend the wording of that order will be allowed to show that it was a temporary order.

"As suggested by counsel, the statement in the order itself, $25 for temporary attorney's fees. What were the attorney's fees for if this was a final order, and

why would the court only allow $25, which is not a proper allowance for a final decree? The order should be corrected to speak the truth, and that truth was that I did not intend this, or it wasn't intended to be presented to the court as a final determination of the entire matter."

The court, after the hearing on the merits, refused to make Eva Holmes any allowance or grant her any relief, the trial judge stating: "I don't think that the court is going to try to get blood out of a turnip. We have $11.95 as the total capital of this plaintiff (Elmer Holmes). I am not going to make an allowance either for appeal or for maintenance."

## I. RES JUDICATA.

Counsel for Eva Holmes contends that the judgment or order dated September 11, 1947, was a final order or judgment and the result of a trial of the separate maintenance action on the merits; that it granted permanent and not temporary alimony; that it was accordingly res judicata of the issues in the divorce action and that the court was without power to modify the order so as to show that it was one pendente lite. The subject of res judicata is one of the troublesome subjects of the law as may be noted by the vast number of judicial decisions thereon. Counsel relies upon the case of Davis vs. Davis, 56 Wyo. 524, 111 P. 2d 124. In that case Dolores Davis on September 6, 1938, brought an action for separate maintenance against John Davis. No defense to the separate maintenance action was interposed and the court on April 29, 1939, awarded separate maintenance to Mrs. Davis. Thereafter on August 30, 1939, John Davis brought an action for divorce against Dolores Davis on the ground that she willfully deserted him. It was held in that case that it was the duty of John Davis in the separate maintenance action to interpose the defense that his wife

deserted him willfully as alleged in the divorce action; that in view of the fact that he failed to interpose such defense, the action for separate maintenance was res judicata of the issues of willful desertion, the court saying among other things that the court in the separate maintenance action doubtless inquired the cause of the separation of the parties and why they were living separate and apart. There are several answers to the foregoing contention.

(1) As already above indicated, the trial judge considered the order dated September 11, 1947, as a temporary order which did not adjudicate the merits of the case but made the wife merely an allowance pendente lite. It seems to be a general rule that in an action for separate maintenance, the court may make a temporary allowance for the support of the wife and for spending money and counsel fees pending the determination of the case on the merits. 42 C. J. S. 225, 226. In determining the question of such allowances pendente lite, the court will not inquire into the merits of the controversy other than to ascertain whether plaintiff has a prima facie cause of action. It will not necessarily refuse to grant temporary relief because of matters set up in defendant's answer or cross-complaint. 42 C. J. S. 228. Thus it was held in Vincent vs. Vincent, 193 N. C. 492, 137 S. E. 426, that in a suit for alimony without divorce, the judge may order alimony pendente lite without determining issues joined by pleadings, and in Johnston vs. Johnston, 182 Miss. 1, 179 So. 853, it was held that a wife's conduct is not a matter for investigation on an application for alimony pendente lite. It is clear accordingly that if the order dated September 11, 1947, was merely an order pendente lite, it would not be res judicata of the issues in the action of divorce or for that matter, of any of the issues in the action for separate maintenance, and the case of Davis vs. Davis, supra, would

have no application herein. The first question before us accordingly is the inquiry as to the nature of the order dated September 11, 1947.

The recitation that no action of divorce was pending was patently untrue. That part of the order commencing with the specific findings to the end is not inconsistent with the fact that it is merely an order pendente lite. In fact, when it speaks of a temporary allowance of attorney fees, it indicates that it is such an order. The only question is whether or not the general finding in favor of Eva Holmes makes it different. It is said in 64 C. J. 1280, that a general finding constitutes an adverse decision on all issues, but it is also said in 64 C. J. 1281, that findings which are not necessary or optional are not conclusive. It is clear, we think, that a general finding in favor of Eva Holmes was not necessary for an order for an allowance pendente lite. Moreover, it is a general rule that: "The force of the estoppel lies in the judgment itself; it is not the finding of the court or the verdict of the jury which concludes the parties, but the judgment entered thereon." 50 C. J. S. 142. See also Freeman on Judgments (5th Ed.), Sec. 702. Thus it was said in Higley vs. Kinsman (Ia.), 216 N. W. 673: "It is a well-established rule that it is only the decretal portion of a decree that is binding and becomes res adjudicata. The recital of facts in a decree is usual and is proper, but the rights of the parties are adjudicated, not by the recital of facts, but solely by the decretal portion of the decree. It is this and this only that becomes the final judgment of the court." And in Stevens vs. Minneapolis Fire Department Relief Ass'n., 219 Minn. 276, 17 N. W. 2d 642, 646, the court stated: "The finding of fact is not res judicata. A finding of fact is not an adjudication; it is the judgment which is the adjudication. Mitchell vs. Bazille, 216 Minn. 368, 13 N. W. 2d 20. A finding in a prior action is not even admissible

in a subsequent one between the parties as evidence of the fact found. State vs. Brooks-Scanlon Ldb. Co., 137 Minn. 71, 162 N. W. 1054."

It would seem accordingly that the general finding above mentioned, standing by itself, does not show that the order of September 11, 1947, was an order of permanent alimony granted after hearing the case on its merits. Now the decretal part of that order does not purport to be an order pendente lite. It is silent on that point, and if it, together with the general finding, stood alone, then we might perhaps be required, following Davis vs. Davis, supra, to hold that the order was one that was made after a hearing on the merits and so res judicata at least on the issue of desertion. But they do not stand alone. It is stated in 50 C. J. S. page 409 that: "The party relying on a judgment as res judicata, while he may be aided in some cases by a presumption, ordinarily has the burden of proving that it was rendered on the merits, and on this issue record and, in appropriate cases, extrinsic or parol evidence is admissible." The order as to allowance of counsel's fee purports to be a temporary order. The allowance to appellant was to last only until the further order of the court which itself indicates the whole of the order to be one pendente lite. When the order was dated and filed, the cross-petition alleging willful desertion on the part of Eva Holmes and cruelty and indignities on her part was pending. The order makes no reference to it whatever, indicating it was not considered. On September 20, 1947, a motion was filed to strike the cross-petition from the files. The motion was sustained by order of the court on October 16, 1947, probably erroneously. 42 C. J. S. 239. But whether erroneously or not, considered as a whole, it seems to show, (notwithstanding the fact that the answer—aside from the cross-petition—raised an issue—) that the court refused to consider the allegations as to will-

ful desertion, cruelty or indignities and could not, therefore, be res judicata thereof, but that on the contrary, the order for support of Eva Holmes was merely one pendente lite. It was inconsistent for counsel for Eva Holmes to claim that the cross-petition and the allegations therein could not be considered in the action for separate maintenance and then after the contention was sustained by the court maintain that these matters were res judicata, in the suit for divorce. The question whether or not the cross-petition could be filed in the action was mentioned and considered at the time when the order for support dated September 11, was made, and the motion to strike the cross-petition and the order sustaining the motion, all of which was done at the same term of court, may be considered as substantially contemporaneous with the order for support. It cannot, accordingly, be said that the order was a final order and not one pendente lite.

(2)    If what has above been stated is not entirely persuasive, still if the order of April, 1948, amending and correcting the order of September 11, 1947, was legally and properly made, the plea of res judicata would not apply herein since: "An order allowing temporary alimony and counsel fees is purely interlocutory in character and, until final decree, remains within the complete control of the court which, in its discretion, may annul it, or vary, revise, or modify it." 42 C. J. S. 234.

But counsel for Eva Holmes maintains that the court was without power to amend or correct the order of September 11, 1947, since it was after the expiration of the term which ended on the second Monday in November, 1947; that the court could correct only clerical errors; that if there was any error in this case, it was a judicial error which the court could not correct after the term. It is true that it is a general rule that

after a term of court is ended, all final judgments and decrees ordinarily pass beyond the control of the court unless steps are taken during the term by motion or otherwise to set aside or modify or correct them. The Midwest Refining Co. vs. George, 44 Wyo. 25, 7 P. 2d 213. But the general rule is not without exceptions and we doubt that it applies to an order allowing alimony, particularly one which, as in the case at bar, provides that it applies only until the further order of the court. Let us, however, without reference to that, consider the power of the court to modify the order dated September 11, 1947. The subject of correction of errors after the term is considered in 49 C. J. S. 246, et seq., 30 Am. Jurisprudence 866, et seq., Annotations, 10 A. L. R. 526, 67, A. L. R. 828, 126 A. L. R. 956, 1 Freeman on Judgments (5th Ed.) Sec. 145, et seq. Judgments, it is said, to correct judicial errors cannot be entered after the term in which the judgment was rendered. 30 Am. Jurisprudence 876, 49 C. J. S. 474. But courts have inherent jurisdiction to make correction of clerical errors at any time upon proper evidence. School District #3, Carbon County vs. The Western Tube Co., 13 Wyo. 304, 80 P. 155. Thus Freeman on Judgments, supra, Sec. 145 states: "The rule that the record admits of no alteration after the term is obsolete. * * * All courts have inherent power independent of statute to correct clerical errors at any time and to make a judgment entry correspond with the judgment rendered." The question as to what constitutes clerical errors is considered at considerable length in the authorities above cited. It is said in 30 Am. Jurisprudence 876: "The authority of the court in this connection does not extend beyond the power to make the journal entry speak the truth, and may be exercised only to supply omissions in the exercise of functions which are clerical merely. It is, however, often difficult to distinguish between clerical and judicial errors. The distinc-

tion between a clerical error and a judicial one is not dependent upon its source. Clerical errors may include mistakes in papers evidencing the judgment of the court made by the court itself." In 126 A. L. R. 977, it is stated: "Clerical errors in judgments, orders, or decrees are not, by the majority rule, limited to mistakes of the clerk, but include also errors made by the judge where of a clerical or ministerial nature." In 126 A. L. R. 978, it is stated: "Although an error in a judgment, order, or decree was originally made by an attorney when preparing the same for the signature of the judge or clerk, it may none the less be a 'clerical' error." In Sec. 146, Freeman on Judgments (5th Ed.), the author states: "But 'clerical' is employed in a broad sense as contradistinguished from 'judicial' error and covers all errors, mistakes, or omissions which are not the result of the exercise of the judicial function. In other words, the distinction does not depend so much upon the person making the error as upon whether it was the deliberate result of judicial reasoning and determination, regardless of whether it was made by the clerk, by counsel or by the judge. Mistakes of the court are not necessarily judicial error. Thus if the judgment or some provision in it was the result of inadvertence, as where the court was laboring under a mistake or misapprehension as to the state of the record or as to some extrinsic fact, but for which a different judgment would have been rendered, the judgment may be vacated or may be corrected to correspond with what it would have been but for the inadvertence or mistake."

If the order dated September 11, 1947, was in fact an order pendente lite, then the mistake in that order, if any, consisted of the omission to show that fact specifically. Since the court had the power to make an order pendente lite or one adjudicating the facts upon the merits, we are inclined to think that such

omission, if not deliberate, may well be regarded as a clerical error. For illustrations of clerical omissions see Annotations, 10 A. L. R. 618, 67 A. L. R. 847, and 126 A. L. R. 987. Even with this omission inserted in the decretal part of the order, thus showing clearly that it was one pendente lite, still the order as a whole, would present a want of harmony, if the general finding above discussed were permitted to stand. But that would be harmless since we have already seen that such general finding is not in such case an element upon which reliance may be had for the plea of res judicata. Such general finding was in fact eliminated from the order as modified by the court and it may not be without interest to inquire whether such elimination can in any case be looked upon as elimination of a clerical order. On its face the error seems to be judicial. It has, however, become the custom in this state for the trial judge to sign every order made and every judgment entered in a case so that if every statement in an order or judgment made or entered by the trial judge were regarded as a judicial order or judgment, there would be little room under such a custom for clerical errors. Hence, that custom must be taken into consideration in determining the point before us. After all, the order or judgment signed by the trial judge is merely evidence of the order made or judgment entered by the court, Bean vs. Ayers, 70 Me. 421, Breene vs. Booth, 6 Colo. App. 140, 40 P. 193, so that whatever may have been formerly true, the statements in an order or judgment signed by the judge may contain a clerical error particularly when, as in the case at bar, the signed order was not, contrary to the custom also generally prevailing in the state, submitted to opposing counsel for approval as to form. Hence, we think that if the evidence is clear that the court in this case did not, in fact, make a general finding such as above mentioned, the order dated September 11, 1947,

might, under the circumstances herein, be corrected as containing a clerical error in that respect. The authorities above cited fully sustain, we think, the conclusion here stated.

Counsel for Eva Holmes maintains that the court was in error in basing the correction and amendment of the order dated September 11, 1947, upon his own recollection and that the law does not permit that. There is a conflict of authorities as to whether or not record evidence is the exclusive evidence from which such corrections and amendments may be made. The subject is fully considered in Annotations in 10 A. L. R. 625, 67 A. L. R. 848, 126 A. L. R. 991. Some of the states like Missouri and Illinois appear to hold that only record evidence is proper. The authorities in other states are to the contrary, holding that parol evidence including the memory and recollections of the trial judge are sufficient evidence on that matter. This view is maintained among other authorities in 1 Freeman on Judgments, supra, Sec. 165a. In the case of Livesay vs. Deibert, 3 Cal. App. 2d 140, 39 P. 2d 466, the court, after stating that the reduction of a judicial act to writing is a clerical act, further stated : "It was for the trial judge to determine whether the order was complete and all that he intended it to be or whether it was deficient. If the mistake was clerical, it could be corrected. If it was judicial, it could not be. It must be presumed that he found it to be his own clerical error ; otherwise he would have had no right to make the second order. The facts were completely and solely within his own knowledge. He alone knew whether a mistake had been made and how it had been made. He had a right to rely upon his own memory and his determination of the fact is conclusive." In the case at bar it was not only the recollection of the presiding judge that the order of September, 1947, was merely an order pendente lite. The record evidence in this case

fully sustains that recollection as already fully mentioned and the contention of counsel for Eva Holmes cannot accordingly be sustained in connection with this matter.

(3) Even if the order of September 11, 1947, were considered as res judicata on the matter of desertion, which is the most that could be claimed under Davis vs. Davis, supra, it would not follow that it would be res judicata of the allegations of cruelty and indignities alleged in the petition of Elmer Holmes for divorce and in connection with which the court found in his favor. It is stated in Annotations, 138 A. L. R. 379, as follows: "Where the suit for an absolute divorce is brought by the defendant in a former separation suit on any ground other than desertion by the other spouse, such as cruel and inhuman treatment, or where the separation suit was not founded on desertion, a decree rendered in the former suit for the plaintiff in that suit (defendant in the divorce suit) cannot operate as a bar, because the causes of action involved in both cases are not identical." The following cases are cited: Jordahl vs. Berry, 72 Minn. 119, 75 N. W. 10, 45 L. R. A. 541, 71 Am. St. Rep. 469, Cochrane vs. Cochrane, 303 Mass. 467, 22 N. E. 2d 6, Fessenden vs. Fessenden, 32 Ohio App. 16, 165 N. E. 746, Scott vs. Scott (Manitoba), 3 West Week Rep. 69, 4 D. L. R. 559, Yeatman vs. Yeatman, 21 L. T. N. S. (Eng.) 733.

The plea of res judicata herein, considered from every possible standpoint, is accordingly without merit.

## II. ARREARS OF TEMPORARY ALIMONY.

Counsel for appellant refers in his brief to arrears in alimony allowances as consisting of vested rights. We doubt that the subject is properly before us. However, counsel pleaded these allowances in his answer filed in this case and he seems to think that the subject

is properly before us, so, in deference to him, we shall so treat it. Counsel cites us to Biewend vs. Biewend, (Cal.), 109 P. 2d 701, Espeland vs. Espeland (Mont.) 109 P. 2d 792, also 132 A. L. R. 1264. These citations are not in point herein. They deal with arrears of allowances of permanent alimony and whether or not they are subject to suit in foreign jurisdictions. We are, in this case, dealing with allowances of temporary alimony granted by interlocutory decrees and in a controversy between husband and wife which was finally and definitely terminated by a decree rendered upon the merits—the latter a matter which must not be forgotten in examining the cases. Permanent alimony is given pursuant to a final order or judgment. Temporary alimony must be viewed in quite a different aspect. An award of temporary alimony creates a mere personal right and ends when the controversy is ended. The distinction has been clearly pointed out in Kelly vs. Kelly, 121 N. J. Eq. 361, 189 A. 665, and in other cases. There is obviously no difference whether the interlocutory order was entered in a divorce action or in an action for separate maintenance. The rule applicable should be the same, and we find that to be true in the authorities. The cases seem to be unanimous in holding that in the absence of a controlling statute, a decree upon the merits terminates all interlocutory decrees for alimony, 17 Am. Jurisprudence 434. And numerous cases seemingly following that rule logically, hold that no allowances of temporary alimony can be enforced after a final decree has been entered unless the right thereto has been reserved in such final decree. In the case of Lief vs. Lief, 117 N. J. Eq. 483, 178 A. 762, 763, defendant was cited for contempt because of failure to pay temporary alimony, after a final decree which made no mention of alimony. The contempt proceedings were dismissed, the court stating in part: "The order for temporary alimony was interlocutory

in its nature. The final decree failed to reserve any right under the order. The decree supersedes the order and disposes of it. The court speaks only through the decree, which is as eloquent in its omissions as in its express provisions. Every preceding order in the suit is terminated upon entry of the final decree unless there be an express reservation. It must be assumed that the decree settles and disposes of the whole controversy between the parties and of everything incidental or ancillary thereto." In Duss vs. Duss, 92 Fla. 1081, 111 So. 382, the court reviews the point before us in an exhaustive decision and concludes as follows: "We do not wish to be understood as saying that the chancellor may not require the payment of accrued alimony or adjudge appropriate punishment against a delinquent husband, before dismissing the cause, or that appropriate provisions may not be made for those matters in the decree of dismissal. We speak now solely of the effect of a decree merely dismissing the cause and containing no provision whatever with respect to the payment of accrued temporary alimony. Such a decree of dismissal necessarily displaces and disposes of all interlocutory and provisional orders in the cause. When entered in a suit for divorce, such a decree will abrogate a former interlocutory order allowing temporary alimony, and hence, if entered while accrued installments remain unpaid, it will relieve the husband from paying such alimony, unless payment thereof be ordered or otherwise reserved or provided for in such final decree." Numerous cases are cited. In Richardson vs. Richardson, 218 Minn. 42, 15 N. W. 2d 127, 154 A. L. R. 526, decided in 1944, the court states among other things: "Except in those jurisdictions where the statutes and practice differ from ours as to the nature of an award of temporary alimony, it has been generally held that the entry of final judgment and decree of divorce supersedes an order for tem-

porary alimony, and that temporary alimony does not continue after a dismissal, discontinuance, or abandonment of the action. * * * As stated in Walter vs. Walter, 15 App. D. C. 333, 338: 'But alimony pendente lite being in all cases merely an incident and ex vi termini limited in its duration to the pendency of the proceedings, it necessarily comes to an end whenever the proceedings are finally terminated by decree, whatever be the purport of such decree, and in whosesoever favor it be. * * * The final decree in such proceedings, whether in favor of the husband or the wife, and whether it decrees a divorce or refuses it, may make provision for permanent alimony, * * * and, if any alimony pendente lite remains in arrear and unpaid, the final decree may make provision for its payment.' * * * Although there is some authority to the contrary, we believe the better rule to be that after the final judgment and decree has been entered the court is without power, in proceedings based only upon a prior temporary order, to punish a defendant for contempt for failure to make payments thereunder of alimony pendente lite." In Woods vs. Woods, 236 Mo. App. 855, 159 S. W. 2d 320, arrears in payment of alimony were sought to be enforced by execution. The court held that this could not be done saying in part: "the contention of appellant that the initial allowance for temporary alimony was an effective, continuing judgment after the decree of divorce in favor of the husband cannot be sustained. An allowance of alimony 'pending the suit for divorce' as provided in Sec. 1519, R. S. Mo. 1939, is in its very nature temporary in character and is properly classified as interlocutory and terminable when the case is heard upon its merits." The rule laid down in the foregoing cases is also stated or upheld in Walter vs. Walter, 15 App. D. C. 333, Tracy vs. Tracy, 184 Ark. 832, 43 S. W. 2d 539, Hayes vs. Hayes, 150 App. Div. 842, 135 N. Y. S. 225, affirmed in 208 N. Y. 600, 102 N. E.

1104, Hammond vs. Hammond, 13 N. Y. S. 2d 870, Pachter vs. Pachter, 130 Misc. 769, 225 N. Y. S. 56, Mittman vs. Mittman, 263 App. Div. 384, 33 N. Y. S. 2d 211, (Separate maintenance action), Sefranka vs. Sefranka, 85 N. Y. S. 2d 663, Wilson vs. Wilson, 14 N. J. Misc. 33, 181 Atl. 257, Trutnau vs. Trutnau, 221 Minn. 462, 22 N. W. 2d 321, Creasey vs. Creasey, 175 Mo. App. 237, 157 S. W. 862, Coons vs. Coons (Mo. App.), 236 S. W. 364, Wright vs. Wright, 6 Tex. 3, O'Haley vs. O'Haley, 31 Tex. 502, Lee vs. Koester, 155 La. 756, 99 So. 588, Pace vs. Bergquist, 173 Ga. 112, 159 S. E. 678, Kelly vs. Kelly, supra, and see Eldridge vs. Eldridge, 278 Mass. 309, 180 N. E. 137, McCaleb vs. McCaleb, 177 Cal. 147, 169 P. 1023.

As indicated above, there are authorities to the contrary. See 27 C. J. S. 905, 42 C. J. S. 234, Annotation 154 A. L. R. 530. We think, however, that the cases above cited state the better rule. To multiply suits or proceedings for contempt in a marital controversy between husband and wife so as to enforce various and different orders or decrees relating to alimony does not seem to be a desirable end. It would seem that ordinarily it would be better to confine the liability therefor under one order or decree at any one time rather than two or more, particularly since the court, in a final order upon the merits, can take previous allowances, paid or unpaid, into consideration. The duty to give alimony is primarily that of the trial courts. In this case, the trial judge refused to give any permanent alimony partly for the reason that he did not want to attempt to get "blood out of a turnip." It is hardly probable that he thought that liability nevertheless existed or could or should be enforced by reason of any prior orders, and that would probably, under similar facts, accord with the thought of the ordinary trial judge. We see no good reason to lay down a rule divergent from the facts of life.

III.  FINAL ALLOWANCES TO WIFE.

Counsel for appellant complains that the court failed to make any allowances to her for support or counsel fees. It is stated in 27 C. J. S. 941: "As a general rule, in the absence of a contrary statutory provision alimony will not be awarded to a wife whose husband is granted a divorce, she being the party in fault." Allowance of counsel fees and alimony, generally speaking, is in the discretion of the court. 27 C. J. S. 915, 923, 948, 42 C. J. S. 250.

The marriage involved herein was one of the "war" marriages which turned out badly. It took place when Elmer Holmes was in the army. The parties lived together for about three days until Elmer was moved to another place, and thereafter they saw each other three or four different times before Elmer went overseas in the Pacific Ocean. He served in the army, so he testified, for approximately 3½ years. During that time his wife received a government allotment of $100 a month while he, himself, received little and was not able even to buy any government bonds. He returned to the United States and was discharged from the army about September, 1945, receiving as terminal leave pay $128. The parties lived together as husband and wife for approximately two months thereafter. While, seemingly, Elmer had no work immediately upon returning from the army, he thereafter had a part-time job driving a truck receiving, not to exceed $21 a week, less the withholding tax. He worked for awhile for Morrison-Knudsen as a common laborer receiving $50 a week, less withholding tax and less $20 a week for room and board. He was unable to get a job in the oil fiields, because he was not sufficiently expert in that kind of work. At the time of the trial he had cash in the sum of $12.05 and no property whatever. He owed one party $140, another $75 and another

$60 to $65. The testimony shows that the appellant was working in the hospital and while it does not appear how much she was paid, it is not improbable that she earned as much, if not more, than Elmer. The allotments of $100 per month to the wife ceased, of course, when Elmer was discharged from the army, and with his small earnings came disillusionment. So approximately two months after Elmer returned from the army, his wife told him, so he testified, that she was through with him and when he came home he would find his clothes packed and he could get them; that he, Elmer, was no earthly damn good; that he would never be a husband; that he was a rat. She raved over the phone for about five minutes. These statements, if true, were most unfortunate. They doubtless wounded the innermost soul of one supposedly a hero when battling the Japanese in the Pacific Ocean, and who was then going through the difficult period of readjustment to civil life.

The parties did not live together thereafter. It would subserve no good purpose herein to review the testimony which induced the court to grant a divorce to plaintiff. We have examined it and find it ample to justify the court in finding the allegations of the petition for divorce as amended to be true. Credibility of the witnesses is for the trial court and not for this court. Nor do we find it possible to say that under the circumstances herein the trial court abused its discretion in not allowing any alimony or counsel fees.

Counsel for appellant further argues that the court should not have heard the case until Elmer Holmes had paid all temporary allowances made to his wife. The contention is without merit. It may be conceded that the court had the power to take that course but that was in its discretion. 27 C. J. S. 1084.

We have examined this case with care. We have discussed every contention of counsel which we deemed of sufficient merit to mention. Contentions made by him which are not mentioned herein are overruled.

We think that the judgment of the trial court herein should be affirmed and it is so ordered.

RINER, C. J., and KIMBALL, J., concur.