Virginia L. BIGGERSTAFF, Appellant
(Plaintiff below),

v.

Harold James BIGGERSTAFF, Appellee
(Defendant below).

No. 3641.

Supreme Court of Wyoming.

July 17, 1968.

David D. Uchner of Lathrop, Lathrop & Uchner, Cheyenne, for appellant.

Wade Brorby of Morgan & Brorby, Gillette, for appellee.

Before HARNSBERGER, C. J., and GRAY, McINTYRE and PARKER, JJ.

Mr. Justice GRAY delivered the opinion of the court.

Plaintiff, Virginia L. Biggerstaff, in October 1966, commenced an action for divorce against the defendant, Harold James Biggerstaff, and in addition to a de-

cree of divorce sought custody and support of a minor daughter, alimony, and a just and equitable division of the property of the parties. The defendant answered, denying plaintiff's grounds for divorce; counterclaimed for divorce; joined in plaintiff's request for an equitable division of the property of the parties; and asked for other equitable relief. The judgment and decree of the trial court granted a divorce to the plaintiff, gave custody of the minor daughter to the defendant, denied plaintiff's request for alimony, directed the defendant to pay obligations incurred by plaintiff during pendency of the action in the sum of $1,796.50, divided the property of the parties, and allowed attorney fees for the plaintiff in the sum of $1,750. Plaintiff has appealed and bases her claim of error on that part of the decree dividing the property and denying alimony. With the exception of plaintiff's request for allowance of attorney fees on this appeal, no other questions are before us.

By way of general information, the record discloses that the parties were married early in life in the year 1943 at a time when both were employed on a ranch owned by the defendant's uncle, J. A. Allison, and in which the defendant was buying a one-fourth interest. Other than a car belonging to defendant, the parties were in meager circumstances. Two children were born as issue of the marriage, namely a son Jon, who was emancipated and self-supporting at the time of the trial, and Janet, the minor daughter above mentioned, who at the time of trial was 19 years of age and attending college. In 1948 the ranch on which the parties lived was sold, but shortly thereafter the defendant, with liberal financial assistance from the uncle, purchased another ranch consisting of some 13,000 acres of deeded land and some 3,200 acres of leased lands. The parties lived on the ranch for some 12 years and then moved to the town of Gillette, Wyoming, where they have since resided. The defendant continued with the management of the ranch until late in the year 1964 when it

was leased to third parties. In the meantime the defendant had entered into the insurance and real estate business and other business ventures and at the time of trial had accumulated a substantial amount of property in his own name, in addition to the jointly owned property of the parties consisting of the home, its furnishings and equipment, and two automobiles. It is not disputed that defendant's gross income from his own interests approximated $22,000 per year. The plaintiff, in the meantime and with the financial assistance of the defendant, acquired a one-third working partnership interest in a ladies' ready-to-wear store which opened for business in August 1965, and her income from that source was approximately $3,500 per year. At the time of trial plaintiff was 40 years of age and in good health. The difficulties between the parties that eventually resulted in the unfortunate dissolution of this marriage had been brewing for some time prior to the filing of plaintiff's action; and the trial court, even though granting the divorce to plaintiff, remarked that each of the parties "share a heavy burden of responsibility for the destruction of this relationship."

Turning now to the specific questions before us, we commend the parties and their counsel, as did the trial court, in obviously putting aside pettiness in settling their affairs by stipulating the extent and nature of the property involved, its value in most instances, its source, and the financial structure under which the properties were held. By the stipulation it was agreed that the value of the joint property above described was in the sum of $28,800. The value of plaintiff's individual partnership interest was $15,000. The value of defendant's individual holdings—with the exception of the value of the ranch upon which the parties were unable to agree— was fixed in the sum of $312,550. With respect to the ranch, the plaintiff offered the testimony of an expert appraiser who fixed its value in the sum of $355,000. The defendant, as the owner, fixed the value in the sum of $271,000. The trial

court, apparently deeming it unessential for purposes of reaching its decision, did not definitely fix a valuation but did take into consideration a value of $240,000, resulting from a capitalization of income approach. Nevertheless, we know from the trial court's memorandum opinion that it declined unqualifiedly to accept the opinion of plaintiff's expert. Consequently, for purposes of illustration only, we take the liberty of splitting the difference between the high and low figures presented to the trial court, which results in a figure of $297,500 as an assigned valuation for the ranch. By doing so we assume— with the exception of the personal effects of each of the parties, which the parties agreed would be retained by each—a valuation of all assets of the parties in the sum of $653,850. Against this value there were liabilities—other than current bills— in the sum of $264,877, and contingent liabilities on loans guaranteed by the defendant in the sum of $215,000. Ostensibly, and without consideration of the contingent liabilities of the defendant, there results an assumed combined net worth of the parties in the sum of $388,973.

In its decree the trial court set over to the plaintiff free and clear of all encumbrances or liabilities the plaintiff's partnership interest and all of the joint property of the parties above described with the exception of the car used by the defendant in his business. In addition the defendant was ordered to pay plaintiff the sum of $39,500 in cash with the privilege of making deferred installment payments of $500 per month, the unpaid balance to bear interest at the rate of five percent per annum and to be secured by a lien upon the ranch property. Defendant was also required to pay plaintiff's current bills in the sum of $1,796 and her attorney fees in the sum of $1,750. Thus, in substance, the plaintiff received or will receive in real and personal property and cash for her share of the parties' assets an amount equal to $85,146. All of the remaining assets, subject to all encumbrances and liabilities, were set over to the defendant.

In presenting plaintiff's claims of error, it is argued that plaintiff received barely 15 percent of the estate accumulated during coverture and such a division could only result from a mistake on the part of the trial court in interpreting the size of the estate or that the trial court abused its discretion and made an unjust and inequitable division of the property. This contention is predicated upon a computation using the approximate figure of $385,-000 as the net worth of the estate, which is somewhat less than our assumed figure of $388,973, but as pointed out ignores the defendant's contingent liability.

Counsel for plaintiff is well aware of this court's reluctance to interfere with the actions of the trial court in decreeing a division of property in a divorce case. *Boschetto v. Boschetto*, 80 Wyo. 374, 343 P.2d 503, 506. The disposition to be made in each case is dependent, of course, upon the circumstances there presented. Over the years, however, general guidelines for this jurisdiction have been laid down and are well summarized in the fairly recent case of *Warren v. Warren*, Wyo., 361 P.2d 525, 526, wherein it was said:

"On several previous occasions this court has set out in full the Wyoming statute, § 20–63, W.S.1957, which pertains to the division of property in divorce cases. It provides that in granting a divorce the court shall make such disposition of the property of the parties as shall appear just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired. Said section also provides that the court may decree to the wife reasonable alimony out of the estate of the husband.

"Also on several previous occasions this court has announced these principles with respect to property divisions in divorce cases: (1) In making a division of property under the statute the trial court exercises a discretion; (2) there are

no hard and fast rules to control its action; (3) the statute does not require an equal division; (4) a just and equitable division is as likely as not to be unequal; and (5) the decision of the trial court should not be disturbed, except on clear grounds, as that court is usually in a better position than the appellate court to judge of the respective merits and needs of the parties. * * *"

In measuring, by the above standards, the manner in which the trial court exercised its discretion, we are not persuaded that appellant has demonstrated "clear grounds" for faulting the trial court in this respect. From our review of the record we are convinced that the trial judge carefully and conscientiously considered all of the factors that should have entered into his deliberations and in this respect we have been favored by some of the reasoning underlying his findings and conclusions, which incidentally are sustained by substantial evidence. In a memorandum opinion which has proved most helpful, the trial judge stated:

"In arriving at the property settlement, the Court has carefully considered a facet which seems most important. Although defendant's estate appears quite large, he is also quite burdened by debt, apparently accrued in the accumulation of this estate. Estates based on equity may well be destroyed by sudden market fluctuation or elimination of working capital. Net worth under these circumstances may be most misleading.

"Plaintiff in this case has made no contribution by way of capital, and apparently, minimal contribution by way of effort. Her role was not that of an active participant, but housewife. It would seem to be fair and clear that the bank stock is not a result of any joint accumulation, but is traceable to the bounty of J. A. Allison [defendant's uncle.].

* * * * * *

"Because the fault of the defendant is not such as to even suggest that it be the basis of any particularly large set-tlement; because of plaintiff's age and good health; because she has made no capital contributions nor suffered any loss by virtue of the marriage, and because of the involved debt structure of the defendant, the Court decrees [there then follows the distribution and directives set forth above.]"

If in the foregoing the trial court has overlooked a controlling factor or factors bearing upon the circumstances presented, or has failed carefully to weigh and correlate the factors mentioned, it is not apparent to us and plaintiff's argument inferring that such is the case is not convincing. For example, we think the trial court was entirely warranted in giving substantial weight to the precarious financial condition in which the defendant was placed as a result of the decree. His burden to meet all of the liabilities accrued in the accumulation of the estate appears quite awesome.

Also, the court's comment concerning the source of the acquisition by defendant of certain bank stock is amply supported by the record, and § 20–63, W.S.1957, contemplates that such is a factor to be considered. While the trial court does not directly indicate the treatment accorded such factor, it is apparent that it did conclude plaintiff had little, if any, claim to the value thereof. In this connection, and as it pertains to plaintiff's argument that she received only 15 percent of the "divorce estate," we would point out that of the 192 shares owned by defendant, 35 shares were purchased from the uncle at a reduced price and 147 shares were inherited from him a few months before plaintiff's action was filed and at a time when the parties had already come to a parting of the ways. Even though we have said, "the problem is not one in mathematics exclusively," Crawford v. Crawford, 63 Wyo. 1, 176 P.2d 792, 796, it is of interest to note that if the agreed value of such stock in the sum of $182,000 is deducted from the "divorce estate" it reduces the approximate value which we have as-

sumed from $389,000 to $207,000. On this basis it appears that the plaintiff has received in excess of 41 percent of the "divorce estate" rather than the 15 percent, which incidentally we have been unable to reconcile even under plaintiff's own computation. Thus there is not demonstrated even mathematically an unjust and inequitable division of the property between the parties.

With respect to the argument concerning the court's failure to grant alimony, it is true, of course, that the trial court is, under the statute, privileged to make provision therefor, Martens v. Martens, Wyo., 364 P.2d 995, 997; and generally speaking the allowance or disallowance of alimony lies within the discretion of that court, Holmes v. Holmes, 66 Wyo. 317, 211 P.2d 946, 957. Our approach to this problem on review is quite the same as a review of a division of property.

The memorandum opinion of the trial court indicates that careful consideration was given to the matter of allowing permanent alimony but a specific allowance therefor was denied in the "light" of the property settlement. Here again we are not persuaded that the trial court erred in this respect.

It is true that defendant's income substantially exceeds the income of the plaintiff. Nevertheless, consideration must be given to the defendant's ability, out of such income, to make a separate home for himself; to retire his liabilities; to provide the sole and proper support of the minor daughter during her minority, which plaintiff estimates would require some $200 per month, and of which burden plaintiff would be relieved; to utilize his best efforts to see that the daughter's education is completed; and to such earning capacity as the plaintiff might realize from the amount of $39,500 distributed to her in cash. Taking all of the circumstances into consideration, we cannot say that the trial court abused its discretion in denying plaintiff's request for alimony.

Concerning plaintiff's motion for the allowance of attorney fees on appeal, we think our remarks in Millar v. Millar, Wyo., 369 P.2d 207, 215, are apropos, and therein it was stated:

"* * * Taking into consideration the facts and circumstances, we do not think, as may be noted from our discussion herein, that this appeal is sufficiently meritorious to justify this court to allow any more counsel fees to counsel for the defendant. * * *"

For the reasons stated the motion of plaintiff for attorney fees is denied.

The judgment herein is affirmed.