GRAY, Justice.
[¶1] Appellants, Paul Cassidy and Bruce Hayse, M.D., filed a W.R.C.P. Rule 60 motion to set aside the Coroner's Inquest Verdict. The district court dismissed the motion, concluding it lacked subject matter jurisdiction. We affirm.
ISSUE
[¶2] Appellants raise two issues, one of which is dispositive and rephrased as:
Does the district court have subject matter jurisdiction in a post-coroner inquest proceeding?
We do not address Appellants' second issue, whether post-inquest proceedings are governed by Wyoming's Administrative Procedure Act because that question is moot: the time for an administrative appeal has passed. When no controversy exists, courts will not consume their time dealing with moot questions.
*1104 Reno Livestock Corp. v. Sun Oil Co. , 638 P.2d 147, 154 (Wyo. 1981) ; Northern Utilities, Inc. v. Public Service Commission , 617 P.2d 1079 (Wyo. 1980).
FACTS
[¶3] This case arises from a seldom used proceeding, the coroner's inquest. Anthony Lee Birkholz and Dr. Hayse were among a group of six people gathered at Dr. Hayse's home in the early morning hours of January 17, 2017. While at Dr. Hayse's house, Mr. Birkholz suffered a medical event and 911 was called. An ambulance transported him to St. John's Medical Center in Jackson, Wyoming. He was subsequently transferred to Eastern Idaho Regional Medical Center in Idaho Falls, Idaho. Mr. Birkholz died January 18, 2017. Kenneth Krell, M.D., an Idaho physician who cared for him in the Eastern Idaho Regional Medical Center, signed his death certificate, which stated that the cause of death was brain death due to out-of-hospital cardiac arrest.
[¶4] Nearly four months later, the Teton County Coroner, Brent Blue, M.D., conducted a coroner's inquest. Dr. Blue empaneled a jury, called witnesses, and presided over the inquest. The proceedings were transcribed. Dr. Blue questioned witnesses, and at times, gratuitously construed witness testimony for the jury. He spoke with individuals who were not called as witnesses and reported these conversations to the inquest jury. Dr. Blue presented Mr. Birkholz's toxicology results to the inquest jury. No court order authorized the release of these reports and no notice of the public release was given to Mr. Birkholz's father, Paul Cassidy.
[¶5] The proceeding resulted in a Coroner's Inquest Verdict of "Death due to Aspiration Secondary to Alcohol and 5-methoxy-DMT Ingestion." The verdict listed contributing factors as failure to timely call 911 and failure to protect his head and airway when dragging Mr. Birkholz down the stairs. The Coroner's Inquest Verdict was filed in the District Court of Teton County, Ninth Judicial District Agency No. 1701P-2322. Paul Cassidy and Dr. Hayse filed a W.R.C.P. Rule 60 motion to set aside the inquest verdict. The district court clerk opened a new civil action (Civil Action No. 17667) and filed the motion in that action.
[¶6] The Teton County Coroner entered an order denying the motion to set aside the inquest verdict. The order was captioned in the coroner's inquest matter (Agency No. 1701P-2322) but was filed in the Civil Action 17667. The Teton County Coroner also filed a Motion to Dismiss the W.R.C.P. Rule 60 motion to set aside the inquest verdict in the civil action. The motion to dismiss alleged lack of subject matter jurisdiction (pursuant to W.R.C.P. Rule 12(b)(1) ), and failure to state a claim upon which relief can be granted (pursuant to W.R.C.P. Rule 12(b)(6) ). The district court concluded that it lacked subject matter jurisdiction and granted the motion to dismiss. This appeal follows.
STANDARD OF REVIEW
[¶7] "Subject-matter jurisdiction refers to the power of a court to hear and determine cases of the general class to which the proceedings in question belong." Christiansen v. Christiansen , 2011 WY 90, ¶ 4, 253 P.3d 153, 155 (Wyo. 2011) (citing Granite Springs Retreat Ass'n, Inc. v. Manning , 2006 WY 60, ¶ 5, 133 P.3d 1005, 1009 (Wyo. 2006) ). "If the district court lacked subject matter jurisdiction, this Court has jurisdiction on appeal, not on the merits, but only as to the jurisdictional issue." Rock v. Lankford , 2013 WY 61, ¶ 18, 301 P.3d 1075, 1080 (Wyo. 2013) (quoting Hall v. Park Cty ., 2010 WY 124, ¶ 3, 238 P.3d 580, 581 (Wyo. 2010) ). "The existence of subject matter jurisdiction is a question of law that we review de novo." Excel Constr., Inc. v. Town of Lovell , 2011 WY 166, ¶ 12, 268 P.3d 238, 241 (Wyo. 2011) (quoting Madsen v. Bd. of Trustees of Mem'l. Hosp. of Sweetwater Cty. , 2011 WY 36, ¶ 9, 248 P.3d 1151, 1153 (Wyo. 2011) ).
DISCUSSION
[¶8] "An inquest proceeding is a statutorily authorized, nonbinding inquiry into the death of an individual, traditionally conducted by the coroner, to determine the cause of death." 18 C.J.S. Coroners § 10, Westlaw (database updated February 2019). An inquest is neither a prosecution nor a lawsuit, but is an inquisitorial proceeding *1105 aimed at establishing the truth. It can contribute to accountability for wrong-doing but is not directly intertwined with criminal process. Paul MacMahon, The Inquest and the Virtues of Soft Adjudication , 33 Yale L. & Pol'y Rev. 275, 291-93 (Spring 2015).
[¶9] Coroners originated in England around 1194. Id. at 280. They were, at that time, officers of the crown with multifaceted roles. Id. These roles encompassed the responsibilities of a modern-day sheriff, coroner, and judge. Id. From the beginning, the coroner's most significant duty was the coroner's inquest. Id. When notified of a dead body, the coroner would call a jury whose duty was to inquire into the death and determine the manner and cause of death. Id.
[¶10] American colonists brought the institution of the coroner to the United States and coroner's inquests were common through the nineteenth century. Id. at 281. They have, however, become relatively obscure in recent history. Id. In many states, the coroner has been replaced by a medical examiner or by a combination medical examiner-coroner. Id. at 282-83. Only eleven states, including Wyoming, still have a coroner-only process.[1] Coroner, Figure 7.1. Map of coroner and ME systems in the United States , ScienceDirect.com, https://www.sciencedirect.com/topics/medicine-and-dentistry/coroner (last visited Feb. 12, 2019).
[¶11] In Wyoming, statutes establish the coroner's duties and the inquest process. "When the coroner is notified that ... the death resulted from injury sustained within the county and he suspects that the death is a coroner's case, he shall conduct an investigation which may include ... [a]n inquest." Wyo. Stat. Ann. § 7-4-201 (LexisNexis 2017). If a coroner decides to hold an inquest, he must summon three county citizens to act as jurors. Id. The coroner may issue subpoenas and compel the attendance of witnesses. He has the same authority to enforce attendance of witnesses and punish for contempt as circuit court judges. See Wyo. Stat. Ann. §§ 1-21-901 through -909 (LexisNexis 2017); Wyo. Stat. Ann. § 7-4-203. The coroner is required to ensure all testimony in an inquest is recorded. Wyo. Stat. Ann. § 7-4-204. At the end of the proceeding, the jurors are required to give the coroner their signed inquisition stating the name of the deceased person and when, how and by what means, if known, he came to death. Wyo. Stat. Ann. § 7-4-205. The coroner must then return the inquisition, the written evidence, and a list of witnesses to the district court. Wyo. Stat. Ann. § 7-4-206. The statute makes no provision for appeal or review of the coroner's inquest. See Wyo. Stat. Ann. §§ 7-4-201 through -206.
[¶12] Wyo. Stat. Ann. § 7-4-206 directs: "The coroner shall return to the district court the inquisition, the written evidence and a list of witnesses providing material testimony." The significant term in this provision is "inquisition." Id. Appellants argue that this language contains a clear directive by the legislature conferring jurisdiction on the district court. Their argument turns on the meaning of the word "inquisition" in the statute.
[¶13] We have held this Court applies a de novo standard of review to issues of statutory construction and interpretation. Ramirez v. State , 2016 WY 128, ¶ 7, 386 P.3d 348, 349 (Wyo. 2016). "In any question of statutory interpretation, our primary objective is to give effect to the legislature's intent." Cheyenne Newspapers, Inc. v. Bd. of Trustees of Laramie Cty. Sch. Dist. No. One , 2016 WY 113, ¶ 10, 384 P.3d 679, 682 (Wyo. 2016) (citing L & L Enters. v. Arellano (In re Arellano) , 2015 WY 21, ¶ 13, 344 P.3d 249, 252 (Wyo. 2015) ). We "first look to the plain language of the statute to determine the legislature's intent." In re Estate of Meyer , 2016 WY 6, ¶ 17, 367 P.3d 629, 634 (Wyo. 2016) (citing *1106 Wyo. Cmty. Coll. Comm'n v. Casper Cmty. Coll. Dist. , 2001 WY 86, ¶¶ 16-17, 31 P.3d 1242, 1249 (Wyo. 2001) ; Fontaine v. Bd. of Cty. Comm'rs , 4 P.3d 890, 894 (Wyo. 2000) ; State ex rel. Motor Vehicle Div. v. Holtz , 674 P.2d 732, 736 (Wyo. 1983) ). When we examine "plain language," we often are guided by dictionary definitions of the terms used in the statute. See, e.g. , BJ Hough, LLC v. City of Cheyenne , 2012 WY 140, ¶ 25, 287 P.3d 761, 770 (Wyo. 2012).
[¶14] "Inquisition" is defined by Black's Law Dictionary as "1. The record of the finding of the jury sworn by the coroner to inquire into a person's death. 2. A judicial inquiry, esp. in a derogatory sense. 3. Hist . Eccles. law . A persistent, grueling examination conducted without regard for the examinee's dignity or civil rights." Inquisition , Black's Law Dictionary (10th ed. 2014). The Merriam-Webster Dictionary alternatively defines inquisition as
1 a capitalized : a former Roman Catholic tribunal for the discovery and punishment of heresy
b : an investigation conducted with little regard for individual rights
c : a severe questioning
2 : a judicial or official inquiry or examination usually before a jury also : the finding of the jury
3 : the act of inquiring : EXAMINATION[.]
Inquisition, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/inquisition (last visited Feb. 6, 2019). If in place of the statutory language, we substitute the Merriam-Webster definition for an inquisition, "a judicial or official inquiry or examination usually before a jury" it opens the door a crack for the argument the legislature meant the district court to have jurisdiction in post-inquest proceedings. Id. If we, instead, substitute the definition found in Black's, "[t]he record of the finding of the jury sworn by the coroner to inquire into a person's death," the jurisdiction argument meets a closed door. Inquisition , Black's Law Dictionary.
[¶15] The district court, applying the doctrine of noscitur a sociis (a word is known by the company it keeps), found that the word "inquisition" in Wyo. Stat. Ann. § 7-4-205 means the documentary record of the jury's finding.
The doctrine of construction-noscitur a sociis -teaches that "the meaning of particular terms in a statute be ascertained by reference to words associated with them in the statute; and that where two or more words of analogous meaning are employed together in a statute, they are understood to be used in their cognate sense, to express the same relations and give color and expression to each other."
Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts , at 195 (2012) (citing City of Fort Worth v. Cornyn , 86 S.W.3d 320, 327 (Tex. App. 2002) ). Under this rule of construction, we construe the phrases "the inquisition," the "written evidence," and "a list of witnesses" in reference to each other. While the word inquisition could refer to the official inquiry conducted by the jury, there is no doubt given "its company" that it refers to the record of the findings of the jury. We agree with the district court, the meaning of the word "inquisition" is evident. We find Appellant's interpretation of the meaning of "inquisition" unpersuasive. The statute directs that a record of the proceedings be filed with the district court.
[¶16] Appellants next argue that the district court has inherent equitable power to address post-inquest proceedings and that such a view is consistent with other jurisdictions. Appellants direct our attention to Estate of Severt v. Wood , 107 Ohio App. 3d 123, 128, 667 N.E.2d 1250, 1253 (1995) (the underlying statute provides for court review of a coroner's verdict); Harshfield v. Harshfield , 842 P.2d 535, 538 (Wyo. 1992) (a district court has inherent equitable power to modify a final judgment); Matter of Kimball's Estate , 583 P.2d 1274, 1275 (Wyo. 1978) (courts have inherent equitable power to grant relief from accident or mistake); Holmes v. Holmes , 66 Wyo. 317, 211 P.2d 946, 953 (1949) (courts have the power to correct clerical errors); and W.R.C.P. Rule 60.
[¶17] These cases are distinguishable from the case before us. Severt is at odds with our case because Ohio statutes specifically authorize *1107 post-inquisition review by the court. Id. , 667 N.E.2d at 1253. The Wyoming cases are distinguishable because they apply W.R.C.P. Rule 60 to modify final orders or judgments. Harshfield , 842 P.2d at 538 ; Kimball's Estate , 583 P.2d at 1275 ; Holmes , 211 P.2d at 953. Here, the inquest verdict is not a judgment.
[¶18] Courts differ on whether a coroner acts in a judicial capacity when conducting an inquest. 18 Am. Jur. 2d Coroners § 8, Westlaw (database updated February 2019). Yet, "every court that has examined the issue" has held that the verdict was not subject to review, because it is "merely advisory," and has "no probative effect." In re Boston , 112 Wash. App. 114, 118-19, 47 P.3d 956, 958 (2002), 78 A.L.R.2d 1218 (1961) (citing Smalls v. State , 101 Ga. 570, 28 S.E. 981 (1897) ). We have said, "[t]he verdict of a coroner's jury is merely advisory and has no probative effect." Raigosa v. State , 562 P.2d 1009, 1015 (Wyo. 1977) (citing 18 Am. Jur. 2d. Coroners § 15, at [650] ).
[¶19] Washington, like Wyoming, does not address post-inquest proceedings in its statutes. In re Boston , 47 P.3d at 958. The Washington Court of Appeals held,
[A]n inquest jury's verdict is not a 'final decision of a court .' It is at most a 'final decision' of an advisory panel of jurors as to the answers to certain questions the coroner (or judge acting as the coroner) has asked them. The jury's verdict does not adjudicate the rights of anyone, nor does it affect anyone's rights. It merely supplies the executive with the jury's opinion as to the cause of death and criminal responsibility of those involved.
Id. at 959 (emphasis in original).
[¶20] Here, as in Washington, Wyoming Statutes establish an inquisition proceeding outside of the courts. Wyo. Stat. Ann. § 7-4-201 et seq. The coroner's inquisition is an executive function, and the Coroner's Inquest Verdict is binding on no one. Wyoming Statutes set out the coroner's duties and responsibilities. See Wyo. Stat. Ann. §§ 7-4-201 through -206. The statutes direct that at the conclusion of inquest proceedings, certain documents be filed with the district court. Wyo. Stat. Ann. § 7-4-206. The filing of these records with the district court does not, without more, confer jurisdiction on the district court. A coroner's inquest verdict is not a final order or judgment and the Court's equitable powers to grant relief do not come into play. Questions raised about the propriety of the process, the lack of fundamental safeguards in an inquisition, and bias in the proceeding can best be addressed by the legislature. The district court properly dismissed the appellant's W.R.C.P. Rule 60(b) motion for lack of jurisdiction.
CONCLUSION
[¶21] A coroner's inquest is an executive matter conducted outside of the courts. The Coroner's Inquest Verdict is not a final order and has no probative effect. The filing of the Coroner's Inquest Verdict and other associated documents with the district court is ministerial and does not confer jurisdiction on the district court. The district court properly dismissed Appellants' W.R.C.P. Rule 60(b) motion for lack of subject matter jurisdiction. We affirm.

The breakdown of states that use coroners only, medical examiners only, or a mixture in the United States is: county medical examiners only (4 states); statewide medical examiners (16 states and the District of Columbia); district medical examiner (1 state); coroner offices by county or multi-county districts (11 states including Wyoming); and mixture of medical examiner and coroner's offices (18 states). Coroner, Figure 7.1. Map of coroner and ME systems in the United States , ScienceDirect.com, https://www.sciencedirect.com/topics/medicine-and-dentistry/coroner (last visited Feb. 12, 2019).