# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 4

### OCTOBER TERM, A.D. 2019

### January 8, 2020

BRUCE HAYSE, M.D. and PAUL CASSIDY,

Appellants
(Petitioners),

v.

S-19-0109

WYOMING BOARD OF CORONER
STANDARDS,

Appellee
(Respondent).

*Appeal from the District Court of Teton County*
*The Honorable Timothy C. Day, Judge*

*Representing Appellants:*

> Frank R. Chapman and Patrick J. Lewallen, Chapman Valdez & Lansing, Casper, Wyoming; Deidre J. Bainbridge, Attorney at Law, Jackson, Wyoming. Argument by Mr. Lewallen.

*Representing Appellee:*

> Bridget L. Hill, Attorney General; Michael J. McGrady, Deputy Attorney General. Argument by Mr. McGrady.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*FOX, J., delivers the opinion of the Court; KAUTZ, J., files a dissenting opinion.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    This case arises from an ongoing dispute over the Teton County Coroner's alleged misconduct during a coroner's inquest.  We affirmed the district court's dismissal of a related action seeking to set aside the coroner's inquest verdict in *In re Birkholz*, 2019 WY 19, 434 P.3d 1102 (Wyo. 2019).  While that action was pending, Paul Cassidy and Dr. Bruce Hayse requested that the Board of Coroner Standards (Board) investigate the coroner's alleged misconduct.  The Board refused to investigate, and the district court affirmed its refusal.  We also affirm.

*ISSUE*

[¶2]    We decide the following dispositive issue:

> Does the Board of Coroner Standards have authority to review complaints alleging that a coroner committed misconduct while conducting an inquest?

*FACTS*

[¶3]    In their previous action, Paul Cassidy and Dr. Bruce Hayse alleged that Teton County Coroner, Dr. Brent Blue, committed misconduct during a coroner's inquest into the death of Anthony Lee Birkholz.  *See generally In re Birkholz*, 2019 WY 19, 434 P.3d 1102.  They also sought to have the Board of Coroner Standards investigate Dr. Blue's alleged misconduct.  The Board refused to investigate the inquest, concluding that it did not have statutory authority to do so.  The Board asserted that under Wyo. Stat. Ann. § 7-4-211 its "narrow purpose . . . is to develop and promulgate training standards" and "enforce compliance with those standards."  Mr. Cassidy and Dr. Hayse responded, arguing that "the Board is charged with establishing coroner's standards dealing with the investigation of coroner's cases" and "has the authority to enforce those standards[.]"  The Board again declined to investigate the inquest.  On petition for judicial review, the district court affirmed the Board's refusal to investigate.  Mr. Cassidy and Dr. Hayse timely appealed.

*STANDARD OF REVIEW*

[¶4]    We review an agency decision "as if it came directly from the administrative agency" and give no deference to the district court's decision on appeal.  *State ex rel. Dep't of Workforce Servs. v. Williams*, 2018 WY 10, ¶ 23, 409 P.3d 1219, 1226 (Wyo. 2018) (citing *Price v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 16, ¶ 7, 388 P.3d 786, 789 (Wyo. 2017)).  We review an agency's conclusions of law de novo.  *Casiano v. State ex rel. Wyo. Dep't of Transp.*, 2019 WY 16, ¶ 8, 434 P.3d 116, 120 (Wyo. 2019) (citing *Lietz v. State ex rel. Dep't of Family Servs.*, 2018 WY 127, ¶ 11, 430

1

P.3d 310, 314 (Wyo. 2018)). The issue of whether the Board has authority to review complaints that a coroner committed misconduct while conducting an inquest requires us to interpret Wyo. Stat. Ann. § 7-4-211. "Statutory interpretation raises questions of law, which we review *de novo*." *Camacho v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2019 WY 92, ¶ 17, 448 P.3d 834, 841 (Wyo. 2019) (quoting *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Smith*, 2013 WY 26, ¶ 9, 296 P.3d 939, 941-42 (Wyo. 2013)).

## *DISCUSSION*

[¶5]   Mr. Cassidy and Dr. Hayse argue that Wyo. Stat. Ann. § 7-4-211(c)(vi) requires the Board to review complaints of coroner misconduct, and presumably to take some sort of action in response to any misconduct. The Board responds that the "Legislature limited the Board's authority to investigating whether a coroner has completed basic education and training requirements, it did not authorize the Board to investigate the day-to-day actions of a duly elected county official."

[¶6]   Our goal in interpreting statutes is to give effect to the legislature's intent. *Wyo. Jet Ctr., LLC v. Jackson Hole Airport Bd.*, 2019 WY 6, ¶ 12, 432 P.3d 910, 915 (Wyo. 2019) (citing *PacifiCorp, Inc. v. Wyo. Dep't of Rev.*, 2017 WY 106, ¶ 10, 401 P.3d 905, 908-09 (Wyo. 2017)). We attempt to determine legislative intent based primarily on the plain and ordinary meaning of the words used in the statute. *Wyo. Jet Ctr.*, 2019 WY 6, ¶ 12, 432 P.3d at 915. "Where legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.'" *Id.* (quoting *Adekale v. State*, 2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo. 2015)). Further, we

> construe each statutory provision *in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection. To ascertain the meaning of a given law, we also consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously. We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence. When the words used convey a specific and obvious meaning, we need not go farther and engage in statutory construction.

*Wyo. Jet Ctr.*, 2019 WY 6, ¶ 12, 432 P.3d at 915. Applying these rules, we conclude that the Board does not have authority to investigate allegations of coroner misconduct.[1]

[¶7]    Mr. Cassidy and Dr. Hayse rely on Wyo. Stat. Ann. § 7-4-211 for their assertion the Board has that authority.   Section 211 creates the Board of Coroner Standards and outlines its duties.  Subsection (c) directs the Board to promulgate various standards, nearly all of which relate to education and training.

> (c)    The board shall:
>
> (i)    Meet at least biannually and at the call of the chairman or of a majority of the membership;
>
> (ii)    Promulgate standards dealing with the investigation of coroner's cases;

---

[1] A "coroner's case" is:

> a case involving a death which was not anticipated and which may involve any of the following conditions:
>
> (A) Violent or criminal action;
>
> (B) Apparent suicide;
>
> (C) Accident;
>
> (D) Apparent drug or chemical overdose or toxicity;
>
> (E) The deceased was unattended by a physician or other licensed health care provider;
>
> (F) Apparent child abuse causes;
>
> (G) The deceased was a prisoner, trustee, inmate or patient of any county or state corrections facility or state hospital, whether or not the death is unanticipated;
>
> (H) If the cause is unknown or cannot be certified by a physician;
>
> (J) A public health hazard is presented; or
>
> (K) The identity of the victim is unknown or the body is unclaimed.

Wyo. Stat. Ann. § 7-4-104(a)(i) (LexisNexis 2019) ("I" omitted in original).

(iii) Promulgate educational and training requirements for coroner basic and continuing education requirements and review those requirements annually;

(iv) Cooperate with the peace officer standards and training commission in developing basic and continuing education courses for coroners;

(v) Promulgate employment standards for deputy coroners and coroner employees. The standards may include the requirement that deputy coroners and coroner employees provide to the employing coroner fingerprints and other information necessary for a state and national criminal history record background check and release of information as provided in W.S. 7-19-106(k)(ii) and federal P.L. 92-544 and consent to the release of any criminal history information to the employing coroner;

(vi) Promulgate rules and regulations to provide for the review of complaints if a coroner or deputy coroner has failed to comply with any provision of W.S. 7-4-103 or this subsection or has failed to meet any educational or training requirement provided under this section. The board shall make recommendations to the peace officer standards and training commission regarding revocation of certifications based on these investigations;

(vii) Provide for a system to offer educational programs to assist coroners and deputy coroners in meeting educational and training requirements provided under this section.

Wyo. Stat. Ann. § 7-4-211(c) (LexisNexis 2019).

[¶8] Subsection (c)(vi) directs the Board to provide for the review of complaints regarding a coroner's compliance "with any provision of W.S. 7-4-103 or this subsection[.]" Mr. Cassidy and Dr. Hayse assert that, read in conjunction with subsection (c)(ii), this provision requires the Board to investigate allegations that a coroner has violated Board-promulgated rules "dealing with the investigation of coroner's cases." This view is flawed. First, subsection (c)(vi) authorizes Board investigation for failure to

comply with "this subsection." It makes no reference to authority to investigate for alleged failure to comply with Board standards. The legislature has incorporated standards or rules violations as a basis for professional discipline in many other contexts and could have done so here, but did not.[2] Second, the Board standard upon which Appellants rely lacks the specificity required to form the basis for any discipline, instead setting forth a general and vague rule of conduct: "the Coroners shall conduct themselves in a manner consistent with the highest standards of professionalism, compassion, and respect." Board of Coroner Standards Rules and Regulations, ch. 6, § 2. *See Bd. of Trustees, Laramie Cty. Sch. Dist. No. 1 v. Spiegel*, 549 P.2d 1161, 1171 (Wyo. 1976) (stated reasons for termination of employment contract were too "vague and indefinite" to allow appellee to defend against them).

[¶9]    Further, Appellants' isolated reading of subsection (c)(vi), is undercut by the limited action that section authorizes the Board to take in response to complaints against coroners. The second sentence of section (c)(vi) authorizes the Board to "make recommendations to the peace officer standards and training commission [(POST)] regarding revocation of certifications[.]" Wyo. Stat. Ann. § 7-4-211(c)(vi). It provides the Board no other course of action for a coroner's alleged violation of section 7-4-211(c). *Id.* POST is a commission charged with establishing and enforcing training and educational standards for various law enforcement officers. *See generally* Wyo. Stat. Ann. §§ 9-1-701 through 711 (LexisNexis 2019); *see also* POST Rules, ch. 1, § 2 ("The purpose of [POST] is to raise and maintain the level of competence within the law enforcement community."). It would be absurd to conclude that the Board must "make recommendations" to a commission designed to enforce training and education standards for conduct unrelated to training and education. *See Adekale*, 2015 WY 30, ¶ 13, 344 P.3d at 765-66 ("This Court will not interpret a statute in a way which renders any portion of it meaningless or in a manner producing absurd results."). Moreover, the "recommendations" the Board is authorized to make to POST relate exclusively to "revocation of certifications." The only certification a coroner might have revoked is that referenced in Wyo. Stat. Ann. § 7-4-103, which requires coroners and deputy coroners to complete a basic coroner's course and "[c]ontinuing education

---

[2] *See, e.g.*, Dissenting Opinion at ¶ 16 (Wyo. Stat. Ann. § 9-1-702(f)(v) (LexisNexis 2019) states POST "shall . . . [g]rant, suspend or revoke certification of peace officers or dispatchers for substantial failure to comply with this act *or the rules of [POST]*") (emphasis in original); *see also* Wyo. Stat. Ann. § 7-4-103(d) (stating that no person "who does not meet the employment standards *adopted by the board of coroner standards pursuant to W.S. 7-4-211(c)(v)*" shall continue in office) (emphasis added); *see also* Wyo. Stat. Ann. § 33-26-402(a)(xxxi) (LexisNexis 2019) (authorizing board of medicine to discipline physicians for "[v]iolation of any board rule or regulation"); Wyo. Stat. Ann. § 33-3-121(a)(iv) (LexisNexis 2019) (authorizing the board of certified public accountants to discipline licensees for "[v]iolation of any rule promulgated by the board"); Wyo. Stat. Ann. § 33-21-146(a)(ix) (LexisNexis 2019) (authorizing board of nursing to discipline licensee that has "been found by the board to have violated any of the provisions . . . of board rules and regulations"); Wyo. Stat. Ann. § 33-4-115(a)(vi) (LexisNexis 2019) (authorizing board of architects to discipline a licensee for "[v]iolating . . . a rule or regulation of the board promulgated pursuant to this act").

requirements promulgated by the board of coroner standards pursuant to W.S. 7-4-211(c)(iii)." Wyo. Stat. Ann. § 7-4-103(a) (LexisNexis 2019). The remedy provided in subsection (c)(vi) plainly relates to a coroner's failure to comply with training and education standards. We presume that the legislature acts in a thoughtful and rational manner when enacting statutes. *Wyo. Jet Ctr.*, 2019 WY 6, ¶ 12, 432 P.3d at 915. It would be far from thoughtful and rational to authorize the Board to investigate misconduct unrelated to education and training, while simultaneously denying it the ability to redress it.[3]

[¶10] The remainder of section 211 bolsters our conclusion that the Board only has authority to review complaints related to coroner education and training. Subsection 211(d) requires POST to cooperate with the Board to develop "course requirements and continuing education requirements[.]" Wyo. Stat. Ann. § 7-4-211(d). Subsection (e) directs the Board to contact the district attorney or the attorney general when necessary "to remove any coroner who is not in compliance with W.S. 7-4-103." Wyo. Stat. Ann. § 7-4-211(e). As noted, section 7-4-103 establishes coroner certification requirements, which are exclusively related to education and training. Finally, subsection (f) directs the Board to notify county commissioners "of any coroner or deputy coroner who has had his certification revoked." Wyo. Stat. Ann. § 7-4-211(f). In short, Section 7-4-211 authorizes the Board to take limited action against coroners only when it concludes a coroner has violated required educational and training standards. Because the Board is not authorized to take any action in response to alleged instances of coroner misconduct, it would be pointless to require the Board to investigate complaints of coroner misconduct. We decline to do so. *See Adekale*, 2015 WY 30, ¶ 13, 344 P.3d at 765-66.

[¶11] Our analysis is also guided by the rule limiting an agency's authority to that expressly granted by the legislature:

> An administrative agency is limited in authority to powers legislatively delegated. "Administrative agencies are creatures of statute and their power is dependent upon statutes, so that they must find within

---

[3] Mr. Cassidy and Dr. Hayse assert "the remedy from the [Board] is to investigate." They speculate that, from that investigation, "some report that comes of that, some finding of fact that the [Board] would publish and give to the parties . . . and it's with that document . . . that something in addition can be done. . . . It would then be incumbent on . . . complainants to do with that report what they feel necessary." There is no authority, statutory or otherwise, indicating that a Board investigation would result in "some report" or "finding of fact," nor is there any basis to conclude that such a document would allow "something in addition" to be done. We have no authority to supply Wyo. Stat. Ann. § 7-4-211(c)(vi) with this missing language. *Int'l Ass'n of Fire Fighters Local Union No. 5058 v. Gillette/Wright/Campbell Cty. Fire Prot. Joint Powers Bd.*, 2018 WY 75, ¶ 33, 421 P.3d 1059, 1067 (Wyo. 2018) ("This Court is not at liberty to add words to a statute that the legislature chose to omit.").

the statute warrant for the exercise of any authority which they claim."

> *Amoco Production Co. v. State Bd. of Equalization*, 12 P.3d 668, 673 (Wyo. 2000) (citations omitted). "An agency is wholly without power to modify, dilute or change in any way the statutory provisions from which it derives its authority." *Platte Development Co. v. State, Environmental Quality Council*, 966 P.2d 972, 975 (Wyo. 1998). Thus, administrative agencies are bound to comply with their enabling statutes. *Sears v. Romer*, 928 P.2d 745, 751 (Colo. App. 1996).

*In re Billings*, 2001 WY 81, ¶ 24, 30 P.3d 557, 568 (Wyo. 2001). The legislature has granted numerous professional boards authority to investigate and discipline licensees for violation of any rules promulgated by their respective boards. *See supra* n.2; Wyo. Stat. Ann. § 5-2-118 (LexisNexis 2019) (granting the Wyoming Supreme Court authority to promulgate rules of attorney conduct and to "[e]stablish[] practice and procedure for disciplining, suspending, and disbarring attorneys[.]").[4] Here, the authority granted to the Board is much more limited. The legislature did not authorize the Board to investigate a coroner's conduct during an inquest.[5] Accordingly, we affirm.

---

[4] The dissent's comparison of revocation of a coroner's certification to revocation of a county attorney's bar license fails because there is simply no comparable disciplinary mechanism for coroners. And while POST has authority to suspend or revoke certification for violation of its rules, there is no legislative direction to suspend or revoke for violation of another agency's rules.

[5] The district court concluded that only Mr. Cassidy had standing to appeal the Board's decision. Dr. Hayse appealed this ruling, claiming he, too, had a redressable injury. Having determined that Wyo. Stat. Ann. § 7-4-211(c) does not allow the Board to redress their complaints, we conclude that both Mr. Cassidy and Dr. Hayse lacked standing. *Sky Harbor Air Serv., Inc. v. Cheyenne Regl. Airport Bd.*, 2016 WY 17, ¶ 27, 368 P.3d 264, 271 (Wyo. 2016) (identifying redressability as one of three standing requirements).

**KAUTZ, J.**, dissenting.

[¶12] I respectfully dissent.

[¶13] From the plain words of the applicable statutes, the Board of Coroners (Board) has the authority (and obligation) to review a complaint that a coroner failed to comply with the Board's standards dealing with the investigation of coroner cases.

[¶14] Wyo. Stat. Ann. § 7-4-211(c)(ii) (LexisNexis 2019) requires the Board to "[p]romulgate standards dealing with the investigation of coroner's cases." This requirement obviously is separate from requirements for education and training. The Board established such standards. Bd. of Coroner Standards, Ch. 6 (2009). Section 7-4-211(c)(vi) then requires the Board to promulgate rules and regulations for the review of complaints that a coroner or deputy coroner has failed to comply with "this subsection," including § 7-4-211(c)(ii). I find the only logical meaning of these statutes is that the Board has the authority to review complaints that a coroner did not comply with the Board's standards dealing with the investigation of coroner's cases. Any other interpretation renders these plain provisions meaningless. Our rules of statutory construction require us to read the statute in a way to avoid making provisions meaningless. *Britain v. Britain* (*Matter of Est. of Britain*), 2018 WY 101, ¶ 28, 425 P.3d 978, 987 (Wyo. 2018).

[¶15] Section 7-4-211(c)(vi) provides the mechanism by which the standards for conducting coroner's cases are enforced. It requires the Board to make recommendations to POST regarding revocations of certifications based on its investigation. The majority concludes that such recommendations are not a sufficient (even absurd) remedy because POST deals only with education and training and the coroners' certifications deal only with education and training. But Wyo. Stat. Ann. § 7-4-103(a) (LexisNexis 2019) requires a coroner to have a certification in order to serve as a county coroner. Revocation of the certification would be a strong remedy. There is nothing absurd with requiring an elected official to obtain a license or certification based on education, and then requiring compliance with conduct standards as a condition for keeping that certification or license. A coroner's requirement for a certification based on training is similar to the requirement that a county attorney pass the bar exam. Just as a county attorney's bar license may be revoked or suspended for failure to comply with conduct standards, a coroner's certification may be revoked under this statutory approach for failure to comply with conduct standards.

[¶16] POST is not limited to enforcing training and education requirements as suggested by the majority. It also has the authority to suspend or revoke certifications based on a failure to follow conduct standards. Wyo. Stat. Ann. § 9-1-702(f)(v) (LexisNexis 2019) states POST "shall . . . [g]rant, suspend or revoke certification of peace officers or dispatchers for substantial failure to comply with this act *or the rules of [POST]*, subject to the contested case procedures of the Wyoming Administrative Procedure

8

Act." (emphasis added). Chapter 8 of the POST rules provides that POST can suspend or revoke a certification for a variety of reasons including (1) conviction of a felony (mandatory revocation or suspension); (2) unlawful use, possession or distribution of drugs (mandatory revocation or suspension); (3) existence of a physical or mental condition which substantially limits the officer's ability to perform the essential duties of a peace officer or poses a direct threat to the health and safety of the public or fellow officers (discretionary revocation or suspension); (4) participation in other conduct or a pattern of conduct which tends to significantly undermine public confidence in the law enforcement profession, including, but not limited to, sexual harassment, discriminatory conduct, and falsifying reports (discretionary revocation or suspension); (5) failure to meet the minimum standards for employment for peace officers (discretionary revocation or suspension); and (6) failure to meet the minimum training requirements (discretionary revocation or suspension). POST is much more than simply an education and training agency; it is an enforcement agency. Consequently, it is not "absurd" to require the Board to make recommendations to POST from investigations of a coroner's alleged non-compliance with conduct standards.

[¶17] The majority opinion disregards portions of § 7-4-211(c) based on the absurdity doctrine. The absurdity doctrine

> applies to unambiguous statutes "as a means to avoid applying the unequivocal language of a statute. But the doctrine has been strictly limited." *Robbins v. Chronister,* 435 F.3d 1238, 1241 (10th Cir.2006) (en banc). The absurdity doctrine applies "in only the most extreme of circumstances," when an interpretation of a statute "leads to results so gross as to shock the general moral or common sense," which is a "formidable hurdle" to the application of this doctrine. *United States v. Husted,* 545 F.3d 1240, 1245 (10th Cir.2008); *Robbins,* 435 F.3d at 1241 (quotation omitted). It is not enough to show that [the legislature] intended a different result from the one produced by the plain language of the statute.

*In re Taylor*, 737 F.3d 670, 681 (10th Cir. 2013). Interpreting § 7-4-211(c) according to its plain language – authorizing and requiring the Board to review complaints regarding a coroner's failure to comply with the Board's standards regarding coroner's cases – does not lead to results so gross as to shock the general moral or common sense. To the contrary, such a plain and logical interpretation fits common sense and gives effect to all of the statute.

[¶18] I would reverse, and would direct the Board to conduct an investigation.

9