# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 157

### OCTOBER TERM, A.D. 2020

### December 28, 2020

IN THE MATTER OF THE ADOPTION
OF: MAJB f/k/a ZJC, minor child,

DLB and DAB,

S-20-0120

Appellants
(Petitioners).

*Appeal from the District Court of Laramie County*
*The Honorable Catherine R. Rogers, Judge*

*Representing Appellants:*

Debra J. Wendtland, Wendtland & Wendtland, LLP, Sheridan, Wyoming. Argument by Ms. Wendtland.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:** This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**GRAY, Justice.**

[¶1]   This appeal comes to us unopposed.   On April 12, 2016, DLB and DAB (Petitioners) adopted a minor, MAJB (MB), from the Henan Province, Zhengzhou, People's Republic of China.   The United States Department of State issued a Hague Adoption Certificate certifying the adoption.   After medical testing in the United States, MB's pediatrician determined the documented age of the child was incorrect.   The testing verified that MB was two years younger than the age listed on the official paperwork.   On February 27, 2020, Petitioners filed a Verified Petition for Adoption (Amended Petition). The petition requested the district court enter an order of adoption recognizing MB's medically established age and directing the issuance of a Wyoming birth certificate with an accurate date of birth.   The district court dismissed the Amended Petition, concluding it lacked subject matter jurisdiction to provide the relief requested.   The district court also found approval of the adoption was moot because, under federal law, the Hague Convention adoption must be recognized as valid and final.   We reverse.

## ISSUES

[¶2]    The issues are:

> 1.    Does the district court have subject matter jurisdiction to approve the Hague Convention adoption?
>
> 2.    Does the district court have the statutory authority to approve the Hague Convention adoption and issue a Wyoming decree of adoption?

## FACTS

[¶3]    As an infant, MB was abandoned outside of a Chinese village.  A couple from the village found the baby and, after unsuccessfully searching for the parents, took the child into their home.   MB remained with them until 2013 when this was no longer possible because both caretakers had died.   Chinese authorities then took custody of MB and placed him in an orphanage.   After attempts to locate relatives or other persons familiar with MB failed, Chinese authorities designated MB's birth date as April 15, 2003.   This estimated birth date appears on the Chinese and United States adoption paperwork.

[¶4]    DLB and DAB, married United States citizens residing in Wyoming, adopted MB on April 12, 2016, using the Hague Convention on Protection of Children and Co-operation in Respect of Intercountry Adoption (Hague Convention).[1]   The United States

---

[1] Congress enacted the Intercountry Adoption Act of 2000 (PL 106–279, 114 Stat. 825 (codified in

1

issued a Hague Adoption Certificate, an IH-3 visa, and a Certificate of Citizenship for MB.[2]

[¶5]    Upon MB's arrival in the United States, Petitioners arranged for his care by a pediatric physician.  On June 1, 2016, pursuant to his doctor's recommendation, MB underwent a bone scan.  The results indicated that MB was approximately two years younger than the age listed on his adoption paperwork.

[¶6]    On November 22, 2019, Petitioners filed a pro se motion titled "Petition for Final Decree of Re-Adoption[3] and for Change to Minor's Birthdate" in the First Judicial District Court of Laramie County, Wyoming.  The petition sought an order of readoption directing the issuance of a Wyoming birth certificate accurately reflecting MB's age.[4] On January 7, 2020, the district court gave notice of its intent to dismiss the petition for lack of subject matter jurisdiction.

[¶7]    On February 27, 2020, Petitioners, now represented by counsel, filed their Amended Petition.  The Amended Petition requested the district court: (1) approve MB's adoption; (2) enter a Final Decree that "the Child shall henceforth be regarded and treated in all respects as the Child of both Petitioners"; (3) correct the date of birth from April 15, 2003, to April 15, 2005; and (4) have the Clerk of Court certify the State of Wyoming Report of Adoption and return the report to Petitioners to be filed with the Wyoming Vital Records to procure a Wyoming birth certificate.

[¶8]    The district court dismissed the Amended Petition.  It determined "Nothing in [Wyo. Stat. Ann. §§ 1-22-101 et seq.] confers subject matter jurisdiction on the District Court to enter an order [of adoption] that would change the date of birth of the individual who is expected to be adopted," and the "adoption of the Minor was finalized in this

---

scattered sections of 42 U.S.C.A.)) and amended the Act in 2008 to fully implement the Hague Convention in the United States.  "The Hague Convention establishes internationally agreed-upon standards and procedures dedicated to safeguarding the process of, and the children affected by, intercountry adoption."  Carolyn H. Thaler et al., *Adoption, Guardianship, and Change of Name*, Md. State Bar Ass'n, PMI MD-CLE 3-1 (5th ed. 2019).

[2] An IH-3 visa is "Issued for children with full and final adoptions from a Hague Convention country." *Before Your Child Immigrates to the United States*, U.S. Citizenship & Immigr. Servs. (Dec. 22, 2020, 1:48 PM), https://www.uscis.gov/adoption/bringing-your-internationally-adopted-child-to-the-united-states/before-your-child-immigrates-to-the-united-states/.

[3] Readoption is the "process in which a child is adopted by decree of a foreign court, and a U.S. state court subsequently confirms the adoption by its own decree."  Richard R. Carlson, *The Emerging Law of Intercountry Adoptions: An Analysis of the Hague Conference on Intercountry Adoption*, 30 Tulsa L.J. 243, 250–51 (1994).

[4] As a foundling, a living child of unknown parentage, MB was not issued a Chinese birth certificate.  The United States does not issue birth certificates.

country when the United States Department of State issued the Hague Adoption Certificate." This timely appeal followed.

## *STANDARD OF REVIEW*

[¶9] Subject matter jurisdiction, application of the Wyoming Constitution, and statutory interpretation are subject to de novo review:

> "The existence of subject matter jurisdiction is a question of law that we review *de novo*." *Harmon v. Star Valley Med. Ctr.*, 2014 WY 90, ¶ 14, 331 P.3d 1174, 1178 (Wyo. 2014) (quoting *Excel Constr., Inc. v. Town of Lovell*, 2011 WY 166, ¶ 12, 268 P.3d 238, 241 (Wyo. 2011)). This case requires us to interpret the Wyoming Constitution, Wyoming statutes, and WDOH regulations—also questions of law that we review de novo. *Saunders v. Hornecker*, 2015 WY 34, ¶ 8, 344 P.3d 771, 774 (Wyo. 2015) ("The interpretation and application of the Wyoming Constitution is a question of law, reviewed *de novo*."); *Herrick v. Jackson Hole Airport Bd.*, 2019 WY 118, ¶ 17, 452 P.3d 1276, 1281 (Wyo. 2019) ("Statutory interpretation is a question of law that we review de novo."); *Bailey v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 152, ¶ 9, 243 P.3d 953, 956 (Wyo. 2010) ("[I]nterpretation of the agency rules and regulations implementing statutory directives is a question of law, reviewed *de novo*.").

*MH v. First Jud. Dist. Ct. of Laramie Cnty.*, 2020 WY 72, ¶ 4, 465 P.3d 405, 407 (Wyo. 2020).

## *DISCUSSION*

### I.    *Does the district court have subject matter jurisdiction to approve the Hague Convention adoption?*

[¶10] "Subject matter jurisdiction is the power to hear and determine cases of the general class to which the proceedings in question belong." *MH*, ¶ 5, 465 P.3d at 407 (quoting *Devon Energy Prod. Co., LP v. Grayson Mill Operating, LLC*, 2020 WY 28, ¶ 11, 458 P.3d 1201, 1205 (Wyo. 2020)). "If a court lacks subject matter jurisdiction, 'action taken by that court, other than dismissing the case, is considered to be null and void.'" *Id.* (quoting *Devon Energy*, ¶ 11, 458 P.3d at 1205). "However, in construing the subject matter jurisdiction of district courts, we presume that jurisdiction exists and any intent to limit it must be clearly stated." *Id.*

[¶11]  In *MH*, we considered whether the district court had jurisdiction to order a change of gender on a birth certificate.  We began by noting:

> The Wyoming Constitution grants broad general jurisdiction to the district courts:
>
>> The district court shall have original jurisdiction of all causes both at law and in equity and in all criminal cases, of all matters of probate and insolvency and of such special cases and proceedings as are not otherwise provided for.  The district court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court.

*MH*, ¶ 8, 465 P.3d at 408 (quoting Wyo. Const. art. 5, § 10).  The plain language of Wyo. Const. art. 5, § 10 "grants district courts original jurisdiction 'in all cases and of all proceedings,' except those placed within the exclusive jurisdiction of another court." *Id.* (quoting Wyo. Const. art. 5, § 10).  We distinguished "the question of subject matter jurisdiction . . . from the question of whether a party has complied with statutory requirements that may entitle her to relief."  *MH*, ¶ 11, 465 P.3d at 409.  "[S]tatutory authority to grant a particular remedy, and any statutory requirement attendant to such a remedy, does not affect district court jurisdiction."  *MH*, ¶ 9, 465 P.3d at 408; *see also Brown v. City of Casper*, 2011 WY 35, ¶¶ 45–46, 248 P.3d 1136, 1147 (Wyo. 2011).

[¶12]  Here, the district court based its dismissal on the premise that Wyoming adoption statutes do not address the district court's role in approving or separately recognizing foreign adoptions (intercountry adoptions).[5]  The legislature has not expressly limited the district court's jurisdiction in this matter, and no other court is charged with jurisdiction over adoption proceedings.  *See* Wyo. Stat. Ann. § 1-22-104 ("[a]doption proceedings shall be commenced by a petition filed in district court").  The district court has subject matter jurisdiction in proceedings for verification of intercountry adoptions.

## II.    *Does the district court have the statutory authority to approve the Hague Convention adoption and issue a Wyoming decree of adoption?*

---

[5] "Foreign," as applied to adoption, can refer to an adoption completed in another state or in another country. *See In re Sullivan's Estate*, 506 P.2d 813, 815 (Wyo. 1973) (a "[Colorado] adoption judgment or decree will be give[n] effect subject to the conditions that the foreign court had jurisdiction to fix the status of the child").

4

[¶13] Having determined the district court has jurisdiction, we must turn to the question of its statutory authority to grant the relief sought by Petitioners. Statutory construction is a question of law, subject to de novo review. *Wyoming Guardianship Corp. v. Wyoming State Hosp.*, 2018 WY 114, ¶ 7, 428 P.3d 424, 429 (Wyo. 2018).

[¶14] The district court found that the absence of any reference to intercountry adoption in the Wyoming adoption statutes precluded an order granting Petitioners' request for relief.

[¶15] "When we interpret statutes, our goal is to give effect to the intent of the legislature, and we 'attempt to determine the legislature's intent based primarily on the plain and ordinary meaning of the words used in the statute.'" *Wyoming Jet Ctr., LLC v. Jackson Hole Airport Bd.*, 2019 WY 6, ¶ 12, 432 P.3d 910, 915 (Wyo. 2019) (quoting *PacifiCorp, Inc. v. Wyoming Dep't of Revenue*, 2017 WY 106, ¶ 10, 401 P.3d 905, 908 (Wyo. 2017)). "Where legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.'" *Id.* (quoting *PacifiCorp*, ¶ 10, 401 P.3d at 908).

> We therefore construe each statutory provision *in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection. To ascertain the meaning of a given law, we also consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously. We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence. When the words used convey a specific and obvious meaning, we need not go farther and engage in statutory construction.

*PacifiCorp*, ¶ 10, 401 P.3d at 908–09 (quoting *Nicodemus v. Lampert*, 2014 WY 135, ¶ 13, 336 P.3d 671, 674 (Wyo. 2014)).

## A. Federal Statutory Background

[¶16] To put this case in context, we begin with a discussion of the Hague Convention and the Accuracy for Adoptees Act (*see* Pub. L. No. 113-74, 127 Stat. 1212 (Jan. 16, 2014)). Adoption, while usually a state law matter, has been the subject of substantial

federal legislation.[6]  "The Hague Convention on Protection of Children and Cooperation in Respect of Intercountry Adoption is an international treaty between convention member countries [which] provides a framework of rules and procedures for the countries to work jointly to ensure certain intercountry adoption procedures."  Sarah B. Ignatius & Elisabeth S. Stickney, *Immigration Law and the Family*, § 13:35 Hague Convention on Intercountry Adoption (2020).  "The United States and 66 other countries agreed to the convention in 1993, and the United States [recognized] it on October 6, 2000, with the passage of the Intercountry Adoption Act of 2000."  *Id.*; Intercountry Adoption Act of 2000, Pub. L. No. 106-279, 114 Stat. 825 (Oct. 6, 2000).  "As of February 2019, 98 countries were parties to the Convention."  Ignatius & Stickney, *supra* § 13:35.  In 2008, the United States enacted implementing legislation authorizing the Hague Convention on Intercountry Adoption.  *See* 42 U.S.C.A. §§ 14901–14954.  "The purpose of the Hague Convention is to prevent abduction, sale, or trafficking in children and to provide adoptees with permanent and loving homes" securing the best interests of the child. Ignatius & Stickney, *supra* § 13:35.  Apart from a Hague Convention adoption, U.S. immigration law allows for two alternate methods of adoption.[7]  A child may be accepted into the United States, depending on the method of adoption and the laws of the birth country, with or without a finalized adoption in the country of origin.  *Intercountry Adoptions*, 1 LPI Legal Professional's Handbook ¶ 1507 (2020).

---

[6] The Indian Child Welfare Act of 1978 establishes standards for the adoption and foster care of Native American Indian children.  25 U.S.C.A. § 1902 (West 1978).  The federal Adoption Assistance and Child Welfare Act of 1980 provides funding to state foster care and adoption assistance programs.  42 U.S.C.A. § 672 (West 2019).  The Adoption and Safe Families Act of 1997 promotes state programs that encourage the adoption of foster care children.  42 U.S.C.A. § 629 (West 2018).

[7] Alternate methods of adoption are: (1) an adopted child adoption; and (2) an orphan child adoption. Ana M. Mencini, *The Intersection of Immigration and Adoption Law: Incoming Intercountry Adoption for Hague and Non-Hague Convention Countries*, 24 DCBA Brief 18, 19 (2012).  The Immigration and Nationality Act (INA) defines adopted child as a "child adopted while under the age of sixteen years if the child has been in the legal custody of, and has resided with, the adopting parent or parents for at least two years . . . ."  8 U.S.C.A. § 1101(b)(1)(E)(i) (West 2014).  The INA defines an orphan as

> a child, under the age of sixteen at the time a petition is filed in his behalf to accord a classification as an immediate relative under section [201(b)], [i] who is an orphan because of the death or disappearance of, abandonment or desertion by, or separation or loss from, both parents, or for whom the sole or surviving parent is incapable of providing the proper care and has in writing irrevocably released the child for emigration and adoption; [ii] who has been adopted abroad by a United States citizen and spouse jointly, or by an unmarried United States citizen who is at least 25 years of age, at least 1 of whom personally saw and observed the child before or during the adoption proceedings; or [iii] who is coming to the United States for adoption by a United States citizen and spouse jointly, or by an unmarried United States citizen at least twenty-five years of age, who have or has complied with the pre-adoption requirements, if any, of the child's proposed residence[.]

8 U.S.C.A. § 1101(b)(1)(F)(i).

[¶17] More specific to this case, federal law recognizes that the birth dates of children born abroad are not always accurately recorded in the countries where they were born. Austin T. Fragomen, Jr. et al., *Accuracy for Adoptees Act*, Immigr. Legis. Handbook § 2:21 (West 2020). MB's certificate of citizenship reflects an inaccurate date of birth. Under the Accuracy for Adoptees Act, inaccurate documents may be amended. *See* Pub. L. No. 113-74, 127 Stat. 1212. However, the amendment of "a Certificate of Citizenship or other federal document . . . must reflect the child's name and date of birth **as indicated on a state court order, birth certificate, . . . or similar state vital records document**[.]" Fragomen, Jr. et al., *supra* § 2:21 (emphasis added). A qualifying state document must be "issued by the child's state of residence in the United States after the child has been adopted or readopted in that state."[8] *Id.*

## B. Ambiguity of Wyo. Stat. Ann. § 1-22-111

[¶18] The district court correctly noted Wyoming's adoption statutes contain no reference to approval of intercountry adoptions or readoptions. In Wyoming, adoption is addressed by Wyo. Stat. Ann. § 1-22-111, which provides:

> (a) After the petition to adopt has been filed and a hearing held the court acting in the best interest and welfare of the child may make any of the following orders:
>
> > (i) Enter an interlocutory decree of adoption giving the care and custody of the child to the petitioners pending further order of the court;

---

[8] Although not raised below or on appeal, we note that our analysis must also account for principles of federal preemption.

> [S]tate law can be preempted in either of two general ways. If Congress evidences an intent to occupy a given field, any state law falling within that field is preempted. If Congress has not entirely displaced state regulation over the matter in question, state law is still preempted *to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law*, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.

*Hermes Consol., Inc. v. People*, 849 P.2d 1302, 1306 (Wyo. 1993) (quoting *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984)). "[S]tates are preempted only to the extent there is actual conflict with federal mandates which make it impossible to comply with the federal mandate." *Id.* Here, if the district court is not authorized to approve a Hague Convention adoption and issue an order to facilitate amendment of inaccurate federal records, Wyoming law would prevent compliance with the federal statute.

7

(ii)   Defer entry of an interlocutory decree of adoption and order the department of family services or a private licensed agency to investigate and report to the court the background of the child and of the petitioners, and the medical, social and psychological background and status of the consenting parent and putative father.   After a written report of the investigation is filed, the court shall determine if the adoption by petitioners is in the best interest and welfare of the child and thereupon enter the appropriate order or decree;

(iii)   Enter a final decree of adoption if the child has resided in the home of the petitioner for six (6) months; or

(iv)   Deny the adoption if the court finds that the best interests and welfare of the child will be served by such denial.

(b)   If the court denies the adoption it shall make an order for proper custody consistent with the best interest and welfare of the child.

Wyo. Stat. Ann. § 1-22-111(a)–(b) (LexisNexis 2019).  Subsection (a) states that, after a hearing to determine the best interest of the child, the district court "**may**" make **any** of a series of listed orders.  Generally, the verb "may" when used in a statute is discretionary, not mandatory.  *In Interest of MKM*, 792 P.2d 1369, 1373 (Wyo. 1990).  "Regarding the term 'any,' we have stated: 'The common and ordinary understanding of the word is that it means all or every, or one or more.  Necessarily it gives to the language employed a broad and comprehensive grasp.'"  *Haskell v. State*, 2018 WY 85, ¶ 30, 422 P.3d 955, 964 (Wyo. 2018) (quoting *McKay v. Equitable Life Assurance Soc'y of U.S.*, 421 P.2d 166, 169 (Wyo. 1966)).

[¶19]  Here, the statute's language gives the district court broad discretion to issue an order consistent with the non-exhaustive options described in the statute.  It does not preclude the district court from taking any specific action.  On the other hand, it does not specifically authorize the recognition of an intercountry adoption.  The comprehensive scope of the statute, and the absence of specific language authorizing a Wyoming adoption for a child with an existing adoption finalized in the child's birth country, open the statute to varying interpretations.  *See Matter of Estate of Frank*, 2019 WY 4, ¶ 8, 432 P.3d 885, 887 (Wyo. 2019) ("[A] statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations." (citations omitted)).

[¶20]  Once the language of a statute is determined to be ambiguous, we apply general principles of statutory construction "to construe any ambiguous language to accurately reflect the intent of the legislature." *In re Estate of Meyer*, 2016 WY 6, ¶ 21, 367 P.3d 629, 636 (Wyo. 2016) (quoting *Powder River Basin Res. Council v. Wyoming Oil & Gas Conservation Comm'n*, 2014 WY 37, ¶ 19, 320 P.3d 222, 229 (Wyo. 2014)).  We "read the statutes together, and construe statutes relating to the same subject in harmony." *Meyer*, ¶ 21, 367 P.3d at 636 (citing *Wyoming Cmty. Coll. Comm'n v. Casper Cmty. Coll. Dist.*, 2001 WY 86, ¶ 16, 31 P.3d 1242, 1249 (Wyo. 2001)).  To determine the legislature's intent in enacting a statute, we "must look to the mischief the act was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conditions of the law and all other prior and contemporaneous facts and circumstances . . . to determine the intention of the lawmaking body."  *Id.* (quoting *Wyoming Cmty. Coll. Comm'n*, ¶ 18, 31 P.3d at 1249).

## C.    Construction of Adoption Statutes

[¶21]  We have had many opportunities to construe Wyoming's adoption statutes in the context of fundamental rights or statutory procedure.  "The right to associate with one's child is protected by both the Wyoming and United States constitutions, therefore adoption statutes are 'strictly construed when the proceeding is against a nonconsenting parent, and every reasonable [inference] is made in favor of that parent's claims.'" *Matter of Adoption of ZEM*, 2020 WY 17, ¶ 11, 458 P.3d 21, 24 (Wyo. 2020) (quoting *In re Adoption of AMP*, 2012 WY 132, ¶ 11, 286 P.3d 746, 749 (Wyo. 2012)); *see also Matter of Adoption of CJML*, 2020 WY 23, ¶ 7, 458 P.3d 53, 55 (Wyo. 2020) (same).  "It is appropriate, therefore, to construe adoption statutes narrowly insofar as a case involves such fundamental constitutional rights as parenthood and the right to procreate."  2 C.J.S. *Adoption of Persons* § 7, Westlaw (database updated November 2020); *In re CW*, 2008 WY 50, ¶ 8, 182 P.3d 501, 503–04 (Wyo. 2008) ("[A]doption statutes are strictly construed when the proceeding is against a nonconsenting parent, and every reasonable intendment is made in favor of the parent's claims." (quoting *In re Adoption of JRH*, 2006 WY 89, ¶ 13, 138 P.3d 683, 686 (Wyo. 2006))).  However, "[A]doption statutes are not to be construed so narrowly or strictly as to defeat the legislative intent."  2 C.J.S. *Adoption of Persons* § 7.

[¶22]  We have said that "[a] statute must be viewed in terms of its objective purpose." *Halliburton Co. v. McAdams, Roux & Assocs.*, 773 P.2d 153, 155 (Wyo. 1989).  The purpose "of the adoption laws is to make provision for the welfare of children, [and] the better rule is to construe adoption statutes in a manner which will promote this purpose." *Matter of Adoption of BGD*, 719 P.2d 1373, 1382 (Wyo. 1986); *see also* 3A J.G. Sutherland, *Statutes and Statutory Construction* § 69:4, at 713 (8th ed. 2018) (Remedial statutes, such as adoption laws, are "enacted for the protection of life and property and to introduce regulations conducive to the public good."); *Wright v. Wysowatcky*, 363 P.2d

9

1046, 1048 (Colo. 1961) ("While courts were formerly inclined to regard adoption statutes as in derogation of the common law and therefore to be strictly construed, the humanitarian purposes of such statutes came to be recognized, and courts generally have evinced a disposition to afford them a more liberal construction."); *Matter of Petition of Phillip A.C.*, 149 P.3d 51, 58 (Nev. 2006) ("Statutes with a protective purpose should be liberally construed in order to effectuate the intended benefits."); *Sharon S. v. Superior Court*, 73 P.3d 554, 560 (Cal. 2003) ("The rule is that the adoption statutes are to be liberally construed with a view to effect their objects and to promote justice. Such a construction should be given as will sustain, rather than defeat, the object they have in view." (citations omitted)).

[¶23] This case is unlike any other we have considered. It does not involve the termination of parental rights, a nonconsenting parent, or the failure to comply with statutory procedures. There is no opposing party. Instead, we are asked to apply Wyoming law to an adoption completed in conformity with stringent intercountry and federal procedural protections, but one that has left a child without a birth certificate or any other record reflecting an accurate birth date.

[¶24] "A liberal construction can expand the meaning of a statute to meet cases which are clearly within the spirit or reason of the law, but courts cannot provide an interpretation inconsistent with the statute's language." Sutherland, *supra*, at 713–14. "Ideologically, states support policies to encourage adoption on humanitarian grounds." Sutherland, *supra*, at 698–99. Wyoming laws make adoptive status equal to the natural parent-child relationship, entitling adopting parents to "all of the rights and obligations respecting the child as if they were natural parents" and the adopted child "the same rights as person and property as children and heirs at law of the persons who adopted them." Wyo. Stat. Ann. § 1-22-114(a)–(b). "[C]hildren have a right to stability and permanency in their family relationships." *In re A.D.*, 2007 WY 23, ¶ 31, 151 P.3d 1102, 1109–10 (Wyo. 2007) (citing *In re Guardianship of K.H.O.*, 736 A.2d 1246, 1257 (N.J. 1999) (holding there is "a strong public policy in favor of permanency . . . [and] [i]n all our guardianship and adoption cases, the child's need for permanency and stability emerges as a central factor")). "[W]e must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation." *Meyer*, ¶ 21, 367 P.3d at 636 (citations omitted); *Hede v. Gilstrap*, 2005 WY 24, ¶ 6, 107 P.3d 158, 162–63 (Wyo. 2005) ("when we are confronted with two possible but conflicting conclusions, we will choose the one most logically designed to cure the mischief or inequity that the legislature was attempting to accomplish" (citation omitted)); *Hayse v. Wyoming Bd. of Coroner Standards*, 2020 WY 4, ¶ 9, 455 P.3d 267, 272 (Wyo. 2020) ("This Court will not interpret a statute in a way which renders any portion of it meaningless or in a manner producing absurd results." (citation omitted)). The relief requested here is "clearly within the spirit or reason" of Wyoming's adoption law where the best interests of the child and the child's need for permanency are central considerations.

10

**D.** **Interrelationship of Wyoming Vital Records Statutes and Wyoming's Adoption Statutes**

[¶25] The Wyoming vital records statutes are intended to maintain "the integrity and accuracy of vital records," and directly address the issuance of a birth certificate for a child born in a foreign country. Wyo. Stat. Ann. § 35-1-424(a). Wyo. Stat. Ann. § 35-1-417 states:

> (e)     The state registrar of vital records shall establish a new certificate of birth, on a form he prescribes, for a person born in a foreign country upon receipt of a certified copy of the decree of adoption entered pursuant to W.S. 1-22-111(a)(iii) and a request for a new certificate by the court decreeing the adoption, the adoptive parents or the adopted person.

Wyo. Stat. Ann. § 35-1-417(e) (LexisNexis 2019). Wyo. Stat. Ann. § 35-1-416(d) directs the state registrar to then forward the record of a foreign-born child's adoption "to the U.S. immigration and naturalization service, U.S. department of justice, or such other office as the federal government may designate."[9] Wyo. Stat. Ann. § 35-1-416(d). A Wyoming court order is a prerequisite to the issuance of a Wyoming birth certificate. A Wyoming birth certificate (or a Wyoming court order) is a prerequisite to an amendment

---

[9] This statutory directive is supported in Wyoming Administrative Rules 048.0059.4 § 5, which explains what must take place before the Wyoming record of adoption is forwarded to the appropriate federal authorities:

> **Section 5.  Foreign Born Adoptions.**  The State Registrar may prepare a new birth certificate for a child born in a foreign country who has been adopted by persons who were residents of Wyoming at the time of the adoption.
> **(a)  The adoption decree must have been issued by a Wyoming court.**
> (b)  The certificate will be on a form approved by the State Registrar.
> (c)  The following information shall be shown on each certificate:
>     (i)  The name of the child as shown in the decree;
>     (ii) The date and place of birth as indicated by the decree and/or report of adoption;
>     (iii) The names and personal particulars of the adoptive parent(s) or of the natural parent if a stepparent adoption;
>     (iv) Documents upon which the new certificate is based.
> (d)  The certificate shall be filed and numbered separately from certificates of persons born in this state.
> (e)  Upon completion of the new birth certificate the evidence upon which it has been based is to be placed in a special file.  The file may be examined only upon receipt of an order of a Wyoming district court or a federal court.

Wyo. Rules & Reguls., Dep't of Health, 048.0059.4 (2008) (emphasis added).

11

of a Hague Certificate of Citizenship.  Fragomen, Jr. et al., *supra* § 2:21.  The question is whether the district court has authority under Wyo. Stat. Ann. § 1-22-111 to recognize the Hague Convention adoption and issue an order to facilitate an accurate birth certificate.  We believe it does.

**E.  Harmonizing § 35-1-417 (Vital Records) and Wyo. Stat. Ann. § 1-22-111 (Adoption)**

[¶26]  In ascertaining the district court's statutory authority, we also look to the purpose of Wyo. Stat. Ann. § 35-1-417(e).  The legislature intended to promote the issuance of a birth certificate for an adopted child born in a foreign country.  A different interpretation would undermine the purpose of the Vital Records Act itself: "to 'protect the integrity and accuracy of vital records'" for Wyoming's citizens.  *MH*, ¶ 14, 465 P.3d at 410 (citations omitted).

[¶27]  We cannot ignore the importance of an accurate age on a birth certificate.  An official document reflecting a correct date of birth is integral to fundamental rights and privileges of United States citizenship including, *inter alia*, the right to vote and eligibility for military service.  "A person's age can affect many of his own legal rights and responsibilities; it can also affect the rights and responsibilities of those with whom he comes in contact."  45 Am. Jur. Proof of Facts 2d *Age of Person* § 631, at 638 (1986).  The age of a person affects the right to contract (Wyo. Stat. Ann. § 14-1-102), the ability to receive child support (Wyo. Stat. Ann. § 20-2-313), and the availability of a driver's license (Wyo. Stat. Ann. §§ 31-7-108, 31-7-115).  A person's age impacts many other matters as well.  *See generally* Wyo. Stat. Ann. § 14-1-101(a) (LexisNexis 2019) ("Upon becoming eighteen (18) years of age, an individual reaches the age of majority and as an adult acquires all rights and responsibilities granted or imposed by statute or common law, except as otherwise provided by law."); Wyo. Stat. Ann. §§ 9-3-415, 9-3-706 (retirement); and Social Security Administration Program Operations Manual System (POMS) PR 02805.048 (social security benefits).

[¶28]  We find no substantive nor public policy reason to deny the Petitioners' request for relief in this case.  The adoption statutes do not preclude the district court from ordering a Wyoming adoption decree recognizing or approving a Hague Convention adoption certificate.[10]  Reading the broad language of Wyo. Stat. Ann. § 1-22-111, with

---

[10] The district court determined its approval of the adoption was moot due to the language in the Hague Adoption Certificate.  The certificate provides that the adoption "shall be recognized as a final valid adoption for purposes of all Federal, State, and local laws of the United States."  "[A]n issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *In Interest of DJS-Y*, 2017 WY 54, ¶¶ 6–7, 394 P.3d 467, 469–70 (Wyo. 2017) (quoting *White v. Shane Edeburn Constr., LLC*, 2012 WY 118, ¶ 13, 285 P.3d 949, 953 (Wyo. 2012)).  Mootness is a question of law that we review de novo.  *Cooper v. Town of Pinedale*, 1 P.3d 1197, 1201 (Wyo. 2000).  Petitioners'

the express statutory language of Wyo. Stat. Ann. § 35-1-417(e), we hold that the adoption statutes allow district courts to approve adoptions of children born in a foreign country and to enter a report of a Wyoming adoption. The district court erred in dismissing the Amended Petition.

### *CONCLUSION*

[¶29] The district court has subject matter jurisdiction to approve the Hague Convention adoption, and is statutorily authorized to issue a decree of adoption allowing MB to obtain a Wyoming birth certificate with an accurate date of birth. We reverse and remand this matter with instructions to proceed in accordance with this opinion.

---

request that the district court issue a decree of adoption to procure an accurate Wyoming birth certificate and allow the amendment of federal documents presents a live controversy.